(72 Misc. Rep. 140.)

COLIHAN v. MILLER, Superintendent of Bldgs., Borough of Manhattan.

(Supreme Court, Special Term, New York County.  May, 1911.)

1. MUNICIPAL CORPORATIONS ( 192*)—OFFICERS—DEPARTMENTS—BUILDINGS.

The power of a borough superintendent of buildings given by Greater New York Charter (Laws 1901, c. 466) § 406, to appoint subordinate officers within the limit of his appropriation, is limited by section 1543, providing that the number of officers, clerks, etc., in every department shall be such as the heads of departments and borough presidents shall designate and approve, not exceeding the number limited by any ordinance of the board of aldermen.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 192.*]

2. MUNICIPAL CORPORATIONS (§ 162*)—OFFICERS—SALARIES.

Under Greater New York Charter (Laws 1901, c. 466) § 1543, providing that the salaries of all officers, clerks, etc., in every department shall be such as shall be fixed by the board of aldermen on the recommendation of the board of estimate and apportionment, the heads of departments have no power to fix salaries.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 162.*]

3. MUNICIPAL CORPORATIONS (§ 892*)—APPROPRIATIONS—SALARIES.

The sums appropriated by an annual budget for salaries of officers and clerks in a department, as authorized by Greater New York Charter (Laws 1901, c. 466) § 226, cannot be taken away except on the abolition of the employment by the authority of the board of estimate.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 892.*]

4. MUNICIPAL CORPORATIONS (§ 192*)—OFFICERS—TRANSFER OF SALARY APPROPRIATIONS.

Where a borough superintendent of buildings in Greater New York requests a readjustment of the positions in his administrative force and field and inspection force involving the transfer of salary appropriations from positions previously filled to those which had been created, and for which the salaries had been fixed by the board of aldermen, but which were unfilled, and the board of estimate and apportionment approves the readjustment, the incumbents of the positions from which the salaries were transferred no longer had a right to continue in them.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 192.*]

5. MUNICIPAL CORPORATIONS (§ 892*)—OFFICERS—TRANSFER OF SALARY APPROPRIATIONS.

After appropriations for salaries are made by the board of aldermen of Greater New York for salaries for the current year, the only way in which the board of estimate and apportionment can make appropriations for salaries for other positions is by the transfer of money already appropriated from positions to be discontinued, as authorized by Greater New York Charter (Laws 1901, c. 466) § 237.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 892.*]

6. MUNICIPAL CORPORATIONS (§ 218*) — EMPLOYÉS — REMOVAL — RE-EMPLOYMENT.

An incumbent of a position in a borough bureau of buildings in Greater New York from which the salary has been transferred to another position ceases to be an employé of that bureau liable to removal, but is entitled to certification to the civil service commission for re-employment.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 218.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Application by William J. Colihan for a peremptory writ of mandamus to Rudolph P. Miller, Superintendent of Buildings, Borough of Manhattan, City of New York. Granted.

Adrian T. Kiernan, for petitioner.

Archibald R. Watson, Corp. Counsel (Arthur Sweeney, of counsel), for respondent.

DAVIS, J. On June 17, 1910, Rudolph P. Miller, who then was and now is the superintendent of buildings of the city of New York, sent a communication to the president of the borough of Manhattan (of whose office the bureau of buildings is a part) requesting a readjustment of the positions in his administrative force and his field and inspection force, and the transfer of moneys between certain accounts requisite to effect such readjustment. This so-called readjustment involved no additional appropriation beyond that allowed in the budget of 1910 for the bureaus affected, but in fact proved a saving of $2,-040. The avowed purpose of this readjustment was the elimination of high-salaried clerks in the administration force and the substitution of typewriters and lower-priced clerks therefor, and to obtain additional positions of assistant engineers in the field and inspection force. The president of the borough of Manhattan transmitted this communication to the board of estimate and apportionment, and thereafter, with the approval of the comptroller, the communication came before the board of estimate and apportionment for action on July 1, 1910. This communication of the superintendent of buildings showed in one column in detail the existing positions and their salaries in the administration force, and in another column headed, "Amended," the list of positions and salaries as they would be after the proposed readjustment. A comparison of these two columns shows the positions, with the amount of their salaries, which were to be eliminated or abolished. On July 1, 1910, the board of estimate and apportionment by resolution approved the readjustment as proposed by the superintendent of buildings. This resolution set forth in schedule form the various positions as they were to be filled thereafter in the administration force and field and inspection force of the bureau of buildings, and the salary attached to each office, and transferred $787.50 from the appropriation made for salaries of the administration force in the budget of 1910 to the field and inspection force for salaries and wages. In his communication presented to the board of estimate and apportionment, Mr. Miller proposed to eliminate the following officials from their positions as they existed on July 1, 1910, in the administration force, and to pay whom an appropriation had been made in the budget of 1910, to wit, chief clerk (1) at a salary of $3,000, assistant chief clerk (1) at a salary of $2,000, clerk (1) at a salary of $3,000 (the petitioner's position), clerk (1) at a salary of $2,400, clerk (1) at a salary of $2,350. On July 1, 1910, all of the above-named positions were filled except those of chief clerk and assistant chief clerk. The proposed readjustment also provided for the following employés and their salaries: One clerk at a salary of $2,100 and one clerk at $1,200. These positions were not then filled, and no appropriation had

been made for them in the budget. They had been created and a salary fixed therefor by the board of estimate and apportionment on April 30, 1902. See City Record, July 2, 1902, p. 4083. This power exercised by said board was conferred by section 10, c. 466, Laws 1901, as amended by chapter 436, Laws 1902. Then there were to be five clerks at a salary of $1,800, instead of four as then existing; eight clerks at $1,200, instead of ten as then existing; seven clerks at $1,-050, instead of two as then existing; two clerks at $900, instead of seven as then existing; two stenographers and typewriters at $1,200, instead of one as then existing; one stenographer and typewriter at $1,050, instead of two as then existing; eight typewriters and copyists at $720. The last above-named positions had not been filled and no appropriation had been made in the budget of 1910, but they had been created and a salary fixed therefor by the board of estimate and apportionment on April 20, 1902. See City Record, July 2, 1902, p. 4081. As stated above, all of the foregoing changes were approved by the resolution of July 1, 1910. On July 1, 1910, and for some time prior thereto, the petitioner, William J. Colihan, was a clerk in the bureau of buildings, borough of Manhattan, New York City. His position was in the classified municipal civil service of the city of New York, and was subject to competitive examination, having been created and a salary fixed therefor at the rate of $3,000 per annum by a resolution of the board of aldermen passed on April 28, 1908, and duly approved by the mayor on May 8, 1908. On July 19, 1910, the respondent preferred charges against the petitioner and suspended him without pay. The hearing on these charges was adjourned from time to time until July 27, 1910, when the petitioner was removed after a hearing, the charges having been sustained by the superintendent. On July 14, 1910, the superintendent of buildings proceeded to fill the positions as authorized in the resolution of July 1, 1910. On July 19, 1910, he made certain removals of employés from the so-called abolished positions to take effect July 20, 1910. On July 28, 1910, the superintendent attempted to rescind his removals of July 19, 1910, and to have them take effect as of July 28, 1910, and about the same time attempted to rescind his appointments to the positions as set forth in the amended schedule and have them take effect as of July 29, 1910.

The petitioner now asks for a peremptory writ of mandamus to quash, annul, and set aside all the proceedings of the superintendent of buildings on the charges preferred against the petitioner, on the ground, among others, that at the time the petitioner was removed he was no longer an employé in the bureau of buildings, and therefore the superintendent of buildings had no power to remove him or to prefer charges against him. The petitioner also charges that his removal was made in bad faith. I think, however, that the consideration of the question of good or bad faith is not necessary for the decision of this application. That could only be determined under an alternative writ, as an issue of fact has been raised thereon. The undisputed facts before the court enable me to dispose of this application as a question of law, and the decision of the question depends upon the legal effect of the resolution of July 1, 1910. The petitioner claims that this resolu-

tion was self-acting, that it abolished his $3,000 clerkship, with others, as soon as it was adopted on July 1, 1910. The respondent contends that those positions could not be eliminated or abolished except by some affirmative act on the part of the superintendent of buildings after the passage of the resolution, and that, as he took no steps to remove the petitioner until July 27th, he was then an employé of the bureau, notwithstanding the resolution of July 1, 1910, passed by the board of estimate. The expression "abolish a position" seems to be in general use in speaking of the action of, the board of estimate or the action of a head of department in matters of this kind. The words do not accurately express what is really done. The position is not abolished. It may be either deprived of money for salary, or the money for salary may remain, but the services of the incumbent discontinued. The superintendent of buildings in the borough of Manhattan is appointed by the president of such borough. The bureau of buildings is created by statute, and is a part of the office of the borough president. Greater N. Y. Charter, § 405.

[1] The power of the superintendent of buildings as to the appointment and removal of clerks, messengers, etc., in his bureau is regulated partly by section 406 of the charter and section 1543. These positions in the bureau of buildings are created by the board of aldermen on the recommendation of the board of estimate and apportionment, preceded by a request from the head of the bureau. It is only to such positions that have been so created and for which salaries have been fixed that any appointment can be made by the superintendent of buildings. Though section 406 of the charter provides that the superintendent of buildings, within the limit of his appropriation, shall have the power to appoint subordinate officers, his discretion or judgment in this respect is limited by section 1543 of the charter, which provides that the number of officers, clerks, employés, laborers, and subordinates in every department shall be such as the heads of the respective departments and borough presidents shall designate and approve, not exceeding the number limited by any ordinance of the board of aldermen.

[2] The heads of departments have now no power to fix salaries. They are fixed by the board of aldermen upon the recommendation of the board of estimate and apportionment. Greater N. Y. Charter, § 1543.

[3] The budget for 1910, in the supporting schedules and schedules of salaries and salaries and wages, contained an appropriation, stating in detail the positions and the amount of salary attached to each position both in the administration and the field and inspection force departments in the bureau of buildings. On the adoption of this budget of 1910, the several sums appropriated to each position for salary became appropriated to the several positions therein named (Charter, § 226), and the salary so appropriated for each position could not be taken away from that position or used for any other purpose except upon the so-called abolition of the position and by the authority of the board of estimate.

[4] What, then, was the effect of the communication of the superintendent of buildings and the consequent resolution of July 1, 1910?

This communication was in form a request for a readjustment of salaries and positions and the transfer between accounts of money necessary for that readjustment. It was not a request that the board of estimate and apportionment create any new positions or fix the salaries, for this the board of estimate and apportionment had no power to do, but it was a request in fact that the board of estimate and apportionment transfer certain moneys from certain positions in existence, mostly positions occupied by high-priced clerks, which the superintendent desired abolished, to other positions already legally created for which salaries had been fixed, and which at that time were unfilled, and for which no appropriation had been made specifically in the budget of 1910. As soon as the board acted favorably upon the request of the superintendent and transferred from the positions to be abolished the money appropriated for the salaries of those positions, their incumbents had no right to continue in those positions. They were eliminated because there was no money appropriated to pay their salaries. It had been transferred to other positions. It would be unlawful for the superintendent to aid in securing their salaries (see Charter, §§ 1541, 1542), nor could such incumbents recover salaries. Charter, § 1542. If the respondent's view is correct, that the petitioner could hold his office after July 1, 1910, and thereafter until removed by the respondent, it would follow that the petitioner would be entitled to salary. But that cannot be, since the money for that salary had been appropriated for other purposes on July 1, 1910.

[5] The only way in which the board of estimate and apportionment could make appropriations for the new positions which the superintendent sought to fill was by a transfer of the money already appropriated for positions to be discontinued. Under section 237 of the charter the board of estimate and apportionment has the power at any time to transfer any appropriation for any year which may be found by the president of the borough, the head of the departments or other officer having control of such appropriation to be in excess of the amount required or deemed to be necessary for the purpose or object thereof, to such other purpose or objects for which the appropriation in such year is insufficient or such as may require the same. This is the only provision of law which conferred upon the board of estimate and apportionment the power to make a readjustment or modification of the schedules of wages as proposed for the purpose of appropriating moneys to the new positions which the superintendent desired to fill. The communication of the superintendent of buildings was, in effect, a statement to the board of estimate and apportionment that for the purposes of action upon his request for the elimination of the high-priced clerks and the transfer of moneys between accounts the board of estimate and apportionment should deem certain positions, including the petitioner's which he named, as having been eliminated and abolished, and should make the transfer of moneys appropriated to the then existing positions which he sought to have eliminated to the new positions which he desired to fill. It is not contended that the board of estimate and apportionment abolished the positions, or abolished the services of the persons in the positions which were sought to be eliminated. The superintendent

alone had the power to do that, and, in effect, he performed that act when he asked for a transfer of money for salaries of the new positions. In other words, the board of estimate and apportionment by its resolution of July 1, 1910, transferred to new positions which the superintendent desired to fill an unexpended balance which had been created by reason of his abolition of certain other positions mentioned in his communication to the board. It is claimed by the respondent that salaries could be paid to incumbents of the old positions after the passage of the resolution of July 1, 1910, and until the superintendent notified the employés that their positions were abolished, notwithstanding that the salaries of the old positions had by such resolution been withdrawn therefrom and transferred to the new positions; and, in this case, the respondent has acted upon the theory that the resolution of July 1, 1910, left him with discretionary power either to continue in office indefinitely those incumbents whose salaries had been affected by the resolution, or to remove them at will from time to time and fill the new places at such times as he pleased. For instance, he continued the petitioner in office long after July 1, 1910, and then filed charges against him and subsequently removed him on those charges. I am convinced that the superintendent of buildings, under the sections heretofore cited, had no power to continue any persons in the positions from which the salaries had been withdrawn by the board, and any payments after July 1, 1910, to persons occupying the old positions which had been eliminated were illegal. The superintendent could, as he saw fit, after July 1, 1910, fill the new positions from time to time or never fill them, but he had no power to retain in office incumbents of the old positions from which the salaries had been transferred.

[6] The foregoing considerations lead me to the conclusion that the act of the superintendent of buildings in preferring charges against the petitioner after the passage of the resolution of July 1, 1910, and thereafter removing him thereon, was illegal, as the petitioner was then no longer under the jurisdiction of the superintendent. The petitioner does not claim that he must be notified of the abolition of his position. From the beginning he has claimed that after the passage of the resolution of July 1, 1910, his position ceased to exist, and that he was no longer an employé of the bureau. His attitude has been consistent throughout and he has refused to accept the money offered to him as salary since July 1, 1910. Instead of preferring charges or removing petitioner after the passage of the resolution of July 1, 1910, the superintendent should have acted under the provisions of section 1543 of the charter and certified his name to the civil service commission. The petitioner would then have been suspended without pay, and would have been entitled to reinstatement within one year thereafter, as provided in that section. I find, therefore, as a matter of law, upon the undisputed facts that the superintendent of buildings did abolish the employment of the petitioner, or, as it is commonly called, "the position"; that the balance of the amount appropriated for such position in the budget of 1910 was on July 1, 1910, by the resolution of the board of estimate and apportionment transferred from such position to other positions, and on and after July 1, 1910, there was no appropriation with which to pay the salary of the petitioner, and that

on and after such date he ceased to be an employé of the bureau of buildings. Any action on the part of the superintendent to retain the petitioner in the city employ or to remove him after that date was illegal. The petitioner is entitled to a peremptory mandamus, with costs, the form of the same to be settled on notice.

Application granted.