(87 Misc. Rep. 601)

PEOPLE ex rel. O'LOUGHLIN, County Register, v. BOARD OF ESTIMATE AND APPORTIONMENT OF CITY OF NEW YORK et al.

(Supreme Court, Special Term, Kings County. November 24, 1914.)

1. MANDAMUS (§ 100*)—SUBJECTS OF RELIEF—DISCRETIONARY POWERS.

The power of the board of estimate and apportionment under New York City Charter (Laws 1901, c. 466) § 237, to make transfers of appropriated funds in certain contingencies, is discretionary, and cannot be controlled by mandamus.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 205–210; Dec. Dig. § 100.*]

2. MUNICIPAL CORPORATIONS (§ 177*)—LEGISLATIVE CONTROL—POWERS OF BOARD OF ESTIMATE AND APPORTIONMENT.

The board of estimate and apportionment cannot by resolution deprive itself in advance of the discretionary power granted to it by New York City Charter (Laws 1901, c. 466) § 237, to make transfers of appropriated funds in certain contingencies.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 416–426; Dec. Dig. § 177.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MANDAMUS (§ 100*)—SUBJECTS OF RELIEF—APPROPRIATIONS FOR COMPEN-
SATION OF EMPLOYES.

Const. art. 10, § 1, makes the office of register of the county of Kings a
constitutional county office, and article 12, § 1, authorizes the Legislature
to regulate the wages of persons employed by any county. Laws 1901,
c. 706, § 2, as amended by Laws 1904, c. 699, Laws 1906, c. 496, and Laws
1913, c. 776, provides that the register shall employ temporary copyists
whenever there is such an accumulation of instruments that he is unable
to have them actually copied within one month after they have been left
for recording, and that such temporary copyist shall be paid at the rate
of 5 cents per folio. Laws 1901, c. 706, § 5, provides that the expense of
conducting the office of the register of the county of Kings shall be a
charge upon the city of New York. New York City Charter (Laws 1901,
c. 466) § 230, subd. 6, requires the board of estimate and apportionment
to include in its final estimate such sum as may be necessary to pay the
salaries of county officers. *Held*, that the register was entitled to manda-
mus to compel the board of estimate and apportionment to make a pro-
vision for the compensation of the necessary temporary copyists, where
the original appropriation for that purpose, which was for a less sum
than the register estimated and than had been expended in the past, was
exhausted.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 205–210; Dec.
Dig. § 100.*]

4. MANDAMUS (§ 3*)—GROUNDS—EXISTENCE OF LEGAL REMEDY.

The fact that the copyists might have a legal action against the city to
recover the compensation due them does not deprive the register of his
right to relief by mandamus.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 8, 10, 11, 16–
34; Dec. Dig. § 3.*]

Mandamus by the People of the State of New York, on the relation
of Edward T. O'Loughlin, Register of the County of Kings, against
the Board of Estimate and Apportionment of the City of New York
and others. Motion for peremptory writ granted.

Jesse Fuller, Jr., of Brooklyn, for relator.

Frank L. Polk, Corp. Counsel, of New York City (George A. Green,
of Brooklyn, of counsel), for respondents.

BENEDICT, J. The time at my disposal will not admit of any-
thing more than a brief statement of my conclusions as to the ques-
tions presented by this application, and which are discussed in the
briefs of the learned counsel for the respective parties. There is no
dispute as to the facts. The office of register of the county of Kings
is a constitutional county office (Const. art. 10, § 1), and under article
12, § 1, of the Constitution the Legislature may "regulate and fix the
wages or salaries * * * of persons employed by * * * any
county * * * of the state." The Legislature, in the exercise of
this authority, enacted laws regulating the wages and salaries of em-
ployes in the register's office (see chapter 706, § 2, Laws of 1901,
as amended by chapter 699, Laws of 1904, chapter 496, Laws of 1906,
and chapter 776, Laws of 1913). As amended in 1906 and 1913, the
register was authorized under certain conditions to employ temporary
copyists in addition to the 35 salaried copyists provided for by these
acts. This authority was conferred in the following terms:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"The register shall from time to time in his discretion employ temporary copyists in addition to the permanent force herein provided for. The temporary copyists shall, however, be employed only at times when there has been in the register's office such an accumulation of deeds, mortgages and other papers that the register is unable to have them actually copied until more than one month later than the time when they have been left at his office for recording, and at no time shall their employment continue longer than is necessary for bringing the copying up to within one month of the date of recording. The temporary copyist shall be paid at the rate of five cents per folio."

By section 5 of chapter 706, Laws of 1901, it is provided that:

"On and after the first day of January, 1902, the expenses of conducting the office of the register of the county of Kings shall be a charge upon the said city of New York and the said expenses shall be deemed a city and county expense."

Section 230, and its sixth subdivision of the charter, provide as follows:

"The board of estimate and apportionment shall * * * annually include in its final estimate the following sums, which shall annually be raised and appropriated: * * * Sixth.—Such sum as may be necessary to pay the salaries of county officers within the counties of * * * Kings * * * and likewise all other expenses within said counties and each of them which are county as distinguished from city charges and expenses."

From the year 1908 to the year 1913, inclusive, the yearly cost of the work done by temporary copyists varied from $44,000 to $88,000. In the year 1913 the register presented to the board of estimate, as his estimate of the cost of such work for the year 1914, the sum of $50,000, and requested the board to make an appropriation of that sum. The board of estimate, however, allowed for the purpose mentioned only the sum of $26,000. When this allowance had been or was about to be exhausted, in or about the middle of the year, the register applied to the board for the difference of $24,000 to carry the work through for the balance of the present fiscal year. This request was denied. The register then requested the board to exercise the power conferred upon it by section 237 of the charter of the city of New York by transferring an unused fund of $18,000 appropriated by the board of estimate for the register's office for additional clerks to the use for which he certified that it was needed. The board declined to grant the request, giving its reasons for such declination. Thereupon the present application for a peremptory writ of mandamus, requiring the board of estimate and apportionment and the individual defendants, as the members of such board, to transfer the said sum of $18,000 so appropriated for the payment of 15 clerks in the office of the register to the use or purpose of providing a fund for the payment of temporary copyists at the rate of 5 cents per folio, and also requiring the said board and its members to take such other or further action as might be necessary to provide a fund for the payment of copyists at the rate of 5 cents per folio, to the extent of $18,000 in all.

[1] I am unable to perceive the basis upon which the appropriation of the sum of $18,000 for 15 additional clerks at the yearly salary of $1,200 each rested. The act of the Legislature of 1913 specified by

office designation and salary all the regular assistants and clerks whom the register of Kings county was entitled to appoint in his office. How, then, could the board of estimate authorize the appointment of more regular clerks by providing for the salaries of such clerks? It seems to me that the board's action in this regard had no warrant in law. This, however, is not important in the present matter, since, as I shall show, the board cannot be compelled to transfer such fund to the use or purpose of supplying deficiencies in the salaries of temporary copyists. As I intimated on the argument, it seems clear that a mandamus will not lie to compel the board of estimate to make the transfer of funds which is authorized by section 237 of the charter in the contingency there mentioned. And this is so because the power is a discretionary one, and is not ministerial or mandatory simply. The court will not substitute its own judgment for that of the board of estimate in matters resting entirely in the discretion of the board.

[2] It may be remarked, however, in passing, that the reason assigned by the board for its refusal to make the transfer mentioned, viz., that to do so would contravene a resolution of the board in respect of such transfers, was wholly without merit, since the board could not by resolution in advance deprive itself of the discretionary powers with which the Legislature has seen fit to clothe it.

[3] All that remains for consideration, therefore, is confined to the question whether the register has the right, in the absence of an appropriation for the express purpose, to employ temporary copyists in his office, if the conditions mentioned in the statute above quoted exist, and thereupon to require the board of estimate to raise the funds necessary for the payment for their work at the statutory rate of 5 cents for each 100 words copied. I have reached the conclusion that he may do this. The Legislature has seen fit to intrust to the register the discretionary power to employ such temporary copyists, and has directed that such copyists be paid at the rate of 5 cents per folio for copying records for which, by other provisions of law, the city has already been paid at the rate of 10 cents per folio. The Legislature has hedged the exercise of this discretion about with conditions which it doubtless believed would prevent any abuse of the power. It might have limited the employment to such and so many temporary copyists as the board of estimate should deem requisite or should provide funds for the employment of; but it did not see fit so to provide. I think that, having in mind the importance to the public of the prompt copying of the papers required by law to be recorded in the office, the legislative intention was to confer a somewhat elastic power upon the register in this respect, to be used only when the exigencies of the business of his office required, and to cease when the occasion which called it into exercise had passed. The power was one intrusted to his discretion, to be exercised for the benefit, not of himself, nor of his employés, but in the interest of the public, for whose accommodation, benefit, and protection his office exists.

It may very well be that the Legislature believed that the interest of the public required that instruments affecting the title to real property ought not to be permitted to accumulate, as they had at one period

done, in the register's office for a very long period of time, running into several years, before being copied in the official records, to the great detriment of all persons having occasion to examine them, as well as greatly endangering the security of titles by the failure to record the title papers promptly. And it may well be that the Legislature deemed it to be more prudent to vest discretionary power in the elected cus-- todian of official title records in the county of Kings, to enable him to meet emergencies of the kind mentioned, rather than to permanently increase the clerical force of his office. Whatever the motive was, the statute itself is plain, and the duty of the court is to enforce and not to frustrate it. If this be correct, I think it follows that, should the register, under the conditions mentioned in the act, employ temporary copyists for whom no budgetary provision has been made in advance, either from accident or design, the persons so employed would be entitled in appropriate actions or proceedings to recover from the city of New York compensation for their work at the stated statutory rate.

[4] As it now appears from the papers submitted that an emergency such as is contemplated by the statute of 1913 exists, which in the judgment and discretion of the register requires that he exercise the power given to him in the act to employ temporary copyists, that there is now in his hands no fund applicable to the payment of such compensation as the statute has specified for such work, and that the register. in his estimate for the expenses of his office for the year 1914 included a request for an amount for such purpose, which the board of estimate and apportionment cut down to a lower figure, without any apparent reason, in the face of previous expenditures for a like purpose, I think the register, a salaried official himself, should not be compelled to outlay the cost of employing such temporary copyists out of his own private resources in advance of an appropriation, but is entitled to the aid of this court in compelling the board of estimate to fulfill its plain duty in the premises as defined by law; and this notwithstanding that a remedy at law might also exist against the city of New York in favor of the persons performing the work. See People ex rel. Sherrill v. Guggenheimer, 28 Misc. Rep. 735, 742, 59 N. Y. Supp. 913, per McAdam, J., citing In re City of Brooklyn, 143 N. Y. 616, 38 N. E. 983, 26 L. R. A. 270.

As I view it, this case is quite different from those arising in the various city departments, as, for example, the superintendent of buildings, the appropriations for the salaries in whose office are discretionary with the board of aldermen. See Matter of Colihan v. Miller, 78 Misc. Rep. 140, 131 N. Y. Supp. 99. In the present case the duty of furnishing the necessary funds is imperative. As it seems to me, the court has power to direct the board of estimate to supply the register with funds sufficient to enable him to carry into effect the power which, as has been shown, is vested in him by the Legislature. The following authorities, I think, are sufficient to support this proposition:

State ex rel. Trustees of the Free Public Library v. Board of Finance of Jersey City, 53 N. J. Law, 62, 20 Atl. 755, where the Supreme Court said:

"The act of the Legislature, sovereign over the matter of taxation, was express and mandatory in requiring this tax to be appropriated and raised. It left nothing to the judgment or discretion of the local authority. A failure to obey its mandate was a misfeasance, and a writ of mandamus may well issue to require the performance of the unperformed and neglected duty, if that duty may be now performed."

In People ex rel. Commissioners v. Common Council of City of New York, 45 Barb. 473, it was said:

"The Legislature having authorized and directed the mayor, aldermen, and commonalty of the city of New York to create a public fund or stock, for the erection of a public market, a mandamus will lie to compel the common council to issue the stock; the common council constituting the only agency or instrument by which the behest of the Legislature can be obeyed, and a mandamus being the only possible method by which that body can be compelled to act."

It was held in People ex rel. Scott v. Supervisors of Chenango, 8 N. Y. 317:

"The supervisors of a county may be compelled by mandamus to perform a duty required by law, which they have omitted at their annual meeting."

It is a fair inference from the facts stated in the petition, viewed in the light of the previous experience of the register, that his request for the appropriation of the sum of $50,000 for the payment of temporary copyists for the year 1914 was justified by the facts and circumstances stated, and was not an unreasonable estimate. I do not understand that the respondents controvert that fact. If, however, they desire to be heard to show that the amount asked for by the register is unnecessary or unreasonable, because the work now in hand or likely to be done would not justify the appropriation of so large an amount, an alternative writ will be allowed to try out that question; but, as I have said, this question was not raised upon the argument, nor in the affidavits submitted in answer to the petition. On the contrary, the very fact that the board allowed the sum of $18,000 for 15 extra clerks would be an indication that in its judgment the amount asked for would be required.

The motion will therefore be granted. Order to be settled in accordance with this memorandum.