A case cannot be turned into a special verdict, unless there be a stipulation to this effect at the trial.

## WOOLSEY *against* CAMP.

THE verdict being for the defendant, and a case being made presenting several questions of law, as to the decisions of the Judge at *nisi prius ;*

*S. A. Foot*, on an affidavit that the defendant's counsel omitted, by mistake, at the trial, either to take a bill of exceptions upon the points of law arising and decided there, or to request the Circuit Judge that the case might be turned into a bill of exceptions, or a special verdict ; and that he was desirous to bring error, if the judgment should be against him ; moved for leave to turn the case into a bill of exceptions.

*J. Platt,* contra.

*Curia.* This is never done, unless there is a stipulation to that effect at the trial. It is almost a matter of course for a Circuit Judge to grant leave to turn a contemplated case into a special verdict or bill of exceptions, if requested by either party, at the trial ; but this should appear, by stipulation, in the case, or in some other way. A bill of exceptions, or special verdict, is a part of the business of the trial ; and if not sought for in any way there, it cannot be obtained afterwards.

Motion denied.

---

## *Ex parte* THE COMMON COUNCIL OF ALBANY.

A resolution of the common council of the city of *Albany,* that certain sums should be raised for the support of the poor, and for the city night watch and lamps, and to pay the interset of the city funded debt, &c. is imperative upon the board of supervisors of the city and county of *Albany*, who are bound to raise such sums upon the city.

A. SPENCER, moved for a mandamus to the board of supervisors of the city and county of *Albany*, commanding

They have no right to refuse, on the ground that large sums of money, heretofore raised for these purposes, have been misapplied.

The duties of the board of supervisors, in raising moneys on vote of towns to destroy noxious animals, &c. (2 R. L. 132, s. 15) and on the certificate of commissioners of highways, to improve roads, (2 R. L. 280, s. 31) placed on the same footing by *A. Spencer*, arg. and adverted to by the court, in delivering their opinion, as illustrating the main question.

*It seems*, therefore, that in these and the like cases, the duties of the board of supervisors, in raising money, are merely ministerial.

them to assess certain taxes on the city of *Albany*, pursuant to a resolution of the Common Council of that city.

It appeared by the papers presented to the Court, that on the *4th October*, 1824, the Common Council resolved that there be raised, by tax upon the citizens of that city, $8000, to pay the interest on the city funded debt ; $8000 for the payment of the night watch, and city lamps ; and $10,000 for the support of the poor the ensuing year. A certified copy of this resolution was furnished to the board of supervisors of the county of *Albany*, at their ensuing meeting, on the 20*th* of *October*, 1824.

The supervisors referred this resolution to a committee of their body, who examined the books of the city chamberlain, and reported that, as it appeared from these, more than $26,-000 had been raised, beyond what had been expended in the objects specified in the resolution, from 1817 to 1823 ; and they recommended a resolution, which was adopted by the board, that $8000 be raised, to pay the interest on the funded debt; $6000 for the payment of the night watch, and city lamps ; and $8000 for the support of the poor.

He said the board of supervisors refused to comply with the full extent of the resolution, upon the ground that they were invested with a sound discretion, and were interposed, by the general act under which they convened, between the Common Council and the citizens, for the protection of the latter against the abuse of trust by the former. The act concerning the city of *Albany*, (2 *R. L.* 465, *s.* 5) after conferring other powers upon the Common Council, enacts, " that the Common Council shall yearly determine the sum necessary to be raised by tax for the support and maintenance of the poor of the said city for the ensuing year, and the supervisors of the city and county of *Albany* being served with a copy of the resolution of the said Common Council directing such sum, shall cause the same to be raised, assessed and collected, according to law ; and such moneys, when collected by tax, shall be paid to the chamberlain of the said city, and shall be drawn for and applied under the direction of the Common Council." The 21st section of the same act, (2 *R. L.* 475) enacts, " that the Common Council shall and may, from

ALBANY,
October, 1824.

Ex parte Com.
Council of Al-
bany.

year to year, cause a tax, not exceeding $15,000, to be assessed, collected, and paid, in the same manner as the other contingent expenses of the said county are assessed, collected and paid, for defraying the expenses of supporting the night watch, and lighting the lamps within the said city; and the chamberlain shall annually publish a statement of the moneys received and expended by virtue of this section, in one or more of the publick papers printed in the said city." As we read these provisions, the board of supervisors have no discretion. The city of *Albany* (containing 5 wards), is, by law, to elect a supervisor for each ward. The several towns of the county, (8 in number) are required to elect a supervisor for each. Of these, forming the county board, a majority, being non-residents of the city, claim the right to protect the citizens of *Albany*, who have no voice in their election, against the Common Council, who are the immediate representatives of the citizens, and may be deposed by them for abusing their trust. To suppose that the legislature ever meant to vest a discretionary power, such as is claimed here by the board of supervisors, would be absurd. The power of refusing is as injurious as the right of imposing taxes, by persons who, or whose constituents, have no manner of interest in them, when raised. What becomes of the city interests, while this conflict is going forward? The object in convening the whole supervisors of the county, to provide for levying taxes, is, that the state, county, city and town taxes, may all be levied by a single operation. Their powers, in relation to the city, are no more than are conferred relative to the towns, by the second section of the act for defraying the publick and necessary charges in the respective counties of the state, (2 *R. L.* 137) where they are enjoined to allow certain accounts against the county; or, (which more nearly resembles the present case) by section 15 of the act relative to the duties and privileges of towns, (2 *R. L.* 132) where they are required to raise certain sums voted by the towns, to be levied upon themselves, and expended in the destruction of wolves, or other noxious animals. Though left to the towns exclusively to fix the amount, a return is to be made to the general board, who are to levy the tax voted.

The words of the various acts, on these and the like sub-
jects, are mandatory. The board have nothing to do with
the propriety or impropriety of the levy. The tax is to be
collected in the same manner as the contingent charges of
the county. Here is no charge of misapplication. It is not
pretended that one cent of the $26,000 has been devoted to
any other than city purposes.

ALBANY,
October, 1824.

Ex parte Com,
Council of Al-
bany.

*A. Van Vechten,* contra. The question is, whether the
board of supervisors have a right to see that the moneys al-
ready raised by the Common Council, for certain specified
objects, have been properly appropriated, before they are
compellable to raise more. They had already raised more
than enough to make up the difference between the sum now
asked for, and the sum levied by the board. When the stat-
ute says that moneys shall be raised for a specifick object,
and they have been raised and not applied, does it mean that
further moneys shall be ra sed for the same object, when there
is enough for this purpose in the treasury ? Shall this be
tolerated ? The interposition of the Court is sought upon
the supposition that the board have neglected their duty, in
refusing to act ; and I grant that, if it appeared necessary to
raise these moneys, a refusal would be such neglect. But
when it appears there is enough on hand, the object cannot
be to meet the wants of the city. It is said, to be sure, that
" with this the board have nothing to do. The money is
gone. There is none in the treasury. No matter what the
purpose to which it has been applied, if for city purposes.
It is enough that we are to be turned out of office. if we con-
duct ourselves improperly. It is enough that it has not been
applied to the proper objects for which it was intended." Is
it so ? The legislature have limited the corporation to a
certain sum, for several of these objects. Here, at least,
their power is not unlimited. But the law implies a discre-
tion, when it orders money to be raised for a specific purpose.
It is plain that if the Common Council raise a surplus, one
year for one object, it should be added to the corresponding
fund of the next year. Otherwise the limitation would be
none at all. It might be evaded at pleasure. When it is

plainly seen that the monies have been applied to the wrong object, the supervisors have a right to interfere, upon the same principle. The expenditure from the respective funds, after 1817, falls much short of the monies raised ; and the balance should have been carried over to the next year, to the credit of those funds. After raising nearly the sum required, the supervisors find a large amount yet unexpended. " No," say the Common Council, " we are to command, and you are to obey." This depends on the question whether the law sanctions the demand. Shall the board raise $20,000 when only $10,000 are requisite ? Suppose a demand of $15,000 for the night watch, and the board find that $10,000 only are necessary ; and the parties come here ; would this Court sanction and enforce the demand? The refusal to grant would be no breach of duty ; and, consequently, no violation of the law. It is said the monies have not been misapplied ; but they have. If raised for a specific object, and not used to answer it, but for another purpose, this is the very definition of the term misapplication. The corporation have power, because they have the means to ascertain what sums are necessary to be raised ; but does this authorize them to require twice that sum ? It is asked, what have the town supervisors to do with the city ? I ask in turn, what have the city supervisors to do with the towns ? are they all here as mere puppets, to dance as the Common Council shall play the wires ? They have power to inquire, and ascertain if the levy is necessary ; and when they find it not to be so, can they conscientiously raise it ? Suppose the Common Council corrupt, and ordering large sums to be raised, when they have plenty of money already ; are the supervisors bound to obey the *su : volo* of such a body ? Are they not intended as a check ? They are the general guardians of the county. Where is the evidence that this $26,000 has been duly expended, or expended at all ? If it has been wrongfully expended, are not the Court bound to notice the misapplication ? Or, if on hand, to say, " you ask for money, when you have plenty already ?"

Every application for a mandamus is addressed to the sound discretion of this Court ; and when right and wrong

are so mixed as to render the right doubtful, they will refuse to interfere. We protest against raising this money, when there is enough on hand. Whose fault is it that inconveniences are to arise for the want of it, if it has been misapplied? That of the Common Council. They are to answer for it. Does it lie with them to ask, "What is to become of the city unless you raise the whole sum demanded?" They should apply to the legislature for leave to raise money for other objects. The law should be the only measure of expenditure; otherwise, you give an unlimited discretion.

*Spencer*, in reply. On the principle claimed here, the supervisors may refuse any thing, imposed upon them as a duty by any of the statutes. Indeed, to have been consistent, they should have adjudged that we wanted nothing, and refused wholly to comply with our resolution. We lie completely at their mercy. We cannot tax our own constituents without their consent. This would result from their having a discretion. This Court, according to *The People* v. *The Supervisors of Albany*, (12 *John.* 414) can exercise no control over them. When once passed upon, the question is *res judicata.*

The amount of the argument on the other side is, that we have abused our power—not that the board have any power to refuse the levy requested. But we say again, the office of the supervisors is merely ministerial. There is no restraint upon us as to the amount of monies to be raised for the support of the poor; though we are confined to $15,000 for the night watch, &c. Had we gone beyond the latter sum, we should have exceeded our power; and the act would not have been binding. There is no pretence that we have not acted within the limits of our jurisdiction. But it is said, that this $26,000 should have been applied to the specific object of the resolution upon which it was raised. That I deny. Any money in the treasury may be applied to any other demands against the corporation. The means of raising money for certain objects are specified; and none other can be resorted to; but it is not material to the city how the monies raised are applied, if it be for their purposes. It will

be intended that the monies have been so applied ; that the officers of the city have done their duty. But suppose it otherwise ; suppose a previous violation of duty ; is this a reason why the city should not be lighted, or the poor maintained for the time to come ? Nor will the Court intend that we can borrow the money which is wanted.

No authority is cited to support the powers of the board to re-judge this question. The language of every act, imposing the duty to raise money upon the board of supervisors, is at war with this construction. Such are the provisions, already adverted to, and such the language of the whole act to which I before referred the Court, (2 *R. L.* 127,) touching the general and special powers of the board. It requires them to *assess, levy, &c.* There is also a provision in the act to regulate highways (2 *R. L.* 280, *s.* 31,) much like the one under consideration. The board are *required* to raise such sum, not exceeding $250, as shall be ordered by the commissioners of highways of a town.

SUTHERLAND, J. delivered the opinion of the Court, to the following effect. The act under which the Common Council made this order, so far as form is concerned, has been strictly complied with ; and the only question submitted to us relates to their power. This law gives, in terms, full authority to do precisely what they have done ; to order the levying of these monies by the board of supervisors. Then have the latter any discretion, whether they shall comply with the order? The provision as to raising money for the support of the poor is couched in very positive language. It is, *that the Common Council shall yearly determine the sum necessary to be raised for this purpose ; and the supervisors, being served with a copy of the corporate resolution,* " *shall cause the same to be raised, assessed and collected according to law.*" Here a power is given without limitation or control, to direct such sums to be raised as the Council may think proper ; and it is imperiously made the duty of the supervisors to raise that sum. The provision as to the city watch confers the power in the same terms, limiting it to the compass of $15,000 per annum. This, by the 21st sec-

tion, is to be raised in the same manner. Both provisions are equally imperative, in terms, upon the supervisors. They, however, contend that they have a discretion in this business ; that they are not mere ministerial officers ; that they are authorized to judge whether the sums, heretofore raised for specific objects, have been properly expended ; that otherwise they might be made the instruments of oppression ; and they show by extracts from the books of the Common Council, that large sums heretofore raised for specific objects have not been expended for these purposes. From the statement made by the committee, in their report, this would seem to be so, to the amount of 20 or $30,000. They insist on a power, implied by law, to guard against such excesses ; and demand that this sum should be carried to the credit of the city in account with their officers. This may all be very proper ; but I am satisfied that no such discretion is conferred by the law, either in its terms or the general provisions and policy of the act, under which the board of supervisors proceed. The contrary is rather to be implied from various provisions similar to those under consideration, to which we were referred at the bar. The council, like the legislature, are responsible to their constituents only for the manner in which they discharge these duties, so long as they act within the scope of their authority. The course is for the former to take the remedy into their own hands ; and remove their public agents, if they have abused their authority, which we do not pretend to say is the case. The statute is imperative upon the supervisors. They cannot exercise the least control, in determining the amount to be raised. The sums sought to be levied are for the use of the citizens of *Albany ;* to be paid by them. We grant an alternative mandamus.

ALBANY,<br>October, 1824.

Ex parte Com.<br>Council of Albany.

Rule accordingly.