The opinion of the court was delivered by
Watkins, J.
This is a controversy with regard to the liquidation and settlement of the affairs of a saw-mill partnership — William Kyle and T. C. Lawless being the partners, and the latter the business manager. Kyle was a steamboat man, and devoted himself to towing lumber, while Lawless operated the mill, had the management of its affairs, and superintended the keeping of the accounts.
The partnership commenced in 1889, and was dissolved in 1896; and, thereupon, a liquidator was appointed pursuant to an agreement —his functions being confined to an examination of the books, and effecting a settlement of the business between the partners.
The liquidator took charge and received from Lawless a number of books which embraced the transactions of the several years during which the partnership existed. It is claimed that Kyle was the monied man of the firm, and had been from the beginning a large creditor of the partnership; and that Lawless was a man of limited means, and *1236 the partnership owed him nothing but his salary, upon which he lived.
The agreement between the parties which brought about the liquidation of the partnership affairs bears date January 27, 1896, and is signed by both Kyle and Lawless, and is of the following tenor :—
“Be it know, that, on the 27th day of January, 1896, we, the undersigned members of the partnership of Lawless & Kyle, do covenant and agree as follows:
“That for the sum of Ten Thousand Dollars, in cash, to be paid within five days, William Kyle shall purchase the interest of T. C. Lawless in and to the following property owned by the said firm:
“The saw mill situated in the Town of Franklin, with all its appurtenances, rights and improvements; the real estate owned by the firm, whether title be in Lawless & Kyle, or Ti C. Lawless; and all the lumber and movable property; the intent being that all of the.assets of the firm, with 'the exception mentioned below, shall be included in this purchase. The accounts and bills receivable shall remain the property of the partnership, and o'ut of them the partnership debts shall be paid. After the payment of all debts appearing on the books and statement in the hands of Kjde out of said accounts and bills receivable, the surplus remaining shall be divided in equal portions between the members of the firm.
“It is further agreed, that, until the payment of the debts of the firm, T. C. Lawléss shall maintain in bank a deposit of Five Thousand Dollars, this sum to be a guarantee of the payment of half of any debts that may remain unpaid after the accounts and bills receivable are exhausted. This ágreement shall .be the authority of the Cashier of the First National Bank of Franklin, where said sum shall be deposited, to hold said sum on deposit until the payment of the said debt.
“Done and signed in the presence of D. Caffery, Jr., and Henry Mayer, at Franklin, Louisiana. (Our italics.)
(Original signed)
“Wm. Kyle,
“T. C. Lawless.
“D. Caffery, Jr.
“State of Louisiana, Parish of St. Mary.
“This agreement entered into by and between Thomas C. Lawless and William Kyle, as follows:
“In carrying out the contract entered into between the parties hereto, of date 27th day of January, 1896, and January the 29th, 1896, *1237 Wilson McKerrall shall collect all bills and notes due the firm, shall pay oil all debts as appears by Ithe books of Lawless & Kyle and by the statement in possession of William Kyle, and the surplus after deducting said debts shall,.at once, be turned over, one-half to said Kyle and one-half to said Lawless.- Said McKerrall shall settle all differences between said parties, and shall receive for his services ten per cent, of all amounts coming into his hands, and is not required to furnish bond for the faithful discharge of his office; and shall employ such assistance as may be to him necessary, at the cost and expense of the parties hereto, and shall incur such costs and expenses as may he reasonably necessary in the liquidation of said partnership.
“Done and signed at Franklin, Louisiana, this 29th day of January, 1896.
“(Originally signed) “T. C-. Lawless,
“Wm. Kyle.
“Accepted, (Signed) Wilson McKerrall
“Witnesses: Henry Mayer,
“D. Caffery, Jr."
In pursuance of that agreement, Kyle became the purchaser for the sum of ten thousand dollars, of the interest of Lawless in certain described property, consisting of the saw mill, appurtenances, fixtures, and real and personal property — in other words all of the assets of the firm, with the exception of accounts and bills receivable, which were to be retained by the liquidator for collection, with the view of paying off all partnership debts from the amounts so collected — the surplus remaining to be divided equally between the two partners.
It was stipulated in the contract that, until the payment of the debts of the partnership, Lawless should maintain in bank a deposit of five thousand dollars to stand as a guarantee for the payment of one-half of the debts that should remain after all accounts had been collected.
It was further provided that the liquidator should employ such assistance as may be necessary at the cost of the partners, and be dispensed from giving bond.
In compliance with the terms and conditions of the contract, Lawless made a deposit of five thousand dollars in the First National Bank of Franklin, Louisiana, on the 27th of January, 1896, the day upon which the contract aforesaid was subscribed.
*1238 On the 12th of September, 1896, William Kyle instituted, a suit against the liquidator, coupled with an injunction, restraining and enjoining him from releasing the aforesaid deposit from the First National Bank, or from paying over to Lawless the sum of five thousand dollars, until the full and final liquidation of the firm of Lawless and Kyle shall be made, and an adjustment of accounts between the members thereof effected.
To his petition, the plaintiff annexed the foregoing agreement, and he thereupon alleged that the liquidator has only partially settled the affairs of the partnership, collected some accounts, and paid some debts, and has rendered to both partners a provisional account showing the progress of his gestión; but,he avers that some of the debts of the partnership are still unpaid, and that none of the accounts between the partners have been settled.
He avers that the understanding, as well as the terms of the agreement was, that the five thousand dollars deposit should remain “as security to protect your petitioner in the event that any indebtedness, either of its said firm to its creditors, or of said Lawless tu petitioner, was not satisfied out of the other assets of said firm, the said sum to be drawn from in such a contingency, and the same to remain until the final settlement of the affairs of said firm”, etc.
Plaintiff avers that he has accounts of said Lawless growing out of certain partnership transactions, of claims for corrections in his accounts, which, if allowed, as they should be, the same being just and legal, will more than exhaust any sum remaining on hand to the credit of said Lawless after the payment of all debts, and which can'be satisfied only out of the said sum of five thousand dollars. That, notwithstanding these claims, aggregating some three thousand dollars, which have not yet been passed upon by the liquidator, and the unsettled condition of the affairs of said concern, the said liquidator proposes, and has announced to petitioner his intention, to release said sum of five thousand dollars from deposit, and to turn same over to said Lawless, and thereby deprive petitioner of the security which is provided in said agreement, and to his great and irreparable injury.
To this petition the liquidator’s answer is a general denial.
In that suit, Lawless appeared, and filed an intervention, in which ■he alleges that the liquidator “has collected more-than sufficient money to pay all debts of the firm, as appears from the books of said Lawless *1239 & Kyle, and by the statement in possession of William Kyle. That the said liquidator has actually paid off all of the debts of the partnership, and has a surplus of funds on hand to be divided between the .said' Kyle and your petitioner.” (Our italics.)
The intervenor also annexes the aforesaid agreement, and makes it a part of his petition, and he invokes the terms thereof, and insists that same have been fully complied with; that plaintiff’s injunction should be dissolved, and the liquidator ordered to surrender to him the five thousand dollars on deposit.
This intervention is given a separate title, and is styled T. C. Lawless vs. Wilson McKerrall, Liquidator; and that fact has brought about some confusion in the record. In the suit thus improperly entitled, William Kyle filed an intervention — but same should be properly considered as in the nature of an amended or supplemental petition. He therein represents that upon an account which was rendered by the liquidator, there is shown a balance on hand over debts and expenditures of the sum of $673.48 for division between the partners.
He alleges that one of the duties of said liquidator is to adjust the accounts between the two members of the firm of Lawless & Kyle, which duty involves a careful examination, and in many places, corrections in the books of said firm.
That the said books contain many errors to his prejudice, and in particular, they are erroneous in the following particulars and amounts:
First. In charging him on December 31st, 1891, with.......$800 00
for a barge sunk in Bayou Vermillion.
Second. And of January 10, 1896, with................... 96 25
for fifty-five cords of wood to B. E. Queen.
Third. In charging him with .......................... 48 74
on account of Boudreaux & Dor'sett.
Fourth. In charging him on July 16th, 1896, with.......... 43 00
on account of Carl Lawson.
Fifth. In crediting him on October 17th, 1892, with only $2061.41 as his share on settlement of accounts for timber sold; whereas he should have been credited with $2561.40 — making a difference of......................500 00
*1240 Sixth. That another is contained in the addition o£ his credits for 1893, same being given as $4,010.64, when it should have been $4,710.64 — making a difference of...... 700 00
He avers that these items alone contain errors to his prejudice - amounting to the sum of...........................$2187 99
He avers that all the books of the concern were not delivered to said liquidator through the fault of Lawless, and that some of them are now in his hands. That he has pointed out to said liquidator the errors herein mentioned, and that he has declined to correct the same, or render a correct account.
He therefore prays that the liquidator be ordered to file a true, correct and complete account of the affairs of the partnership, so as to conform to the averments of his petition.
To this petition, Lawless filed an exception, but same was overruled, and the case went to trial. On the issues thus joined, considerable testimony was taken.
Our learned brother of the District Court examined the case with special care, and critically examined all the evidence, made a statement thereof in his reasons for judgment, and thereupon entered the following decree:
“It is, for these reasons, ordered, adjudged and decreed that Wilson McKerrall, liquidator of the co-partnership of Lawless & Kyle, file in court a full and complete account of the affairs of Lawless & Kyle, up to the present time; that the errors herein mentioned be corrected; and that William' Kyle be recognized on said account as a creditor of said firm in and for the amounts recognized in this judgment, to-wit: On October 17, 1892, he be recognized as a creditor of said estate for the sum of $2,561.14; that for the year 1893 that he be recognized as a creditor of said firm for ' $4,710.64, less the debits for said year $720.76.
“That the charge of $800.00 on December 31st, 1891, against Kyle for a barge sunk in Vermilion Bayou be stricken out and disallowed; that the charges against said Kyle on January 21st, 1893, of $14.50, and May 12th, 1893, of $20.00, paid to Charles Rayne, be disallowed. That the charge against said Kyle, January, 1896, for the account of Boudreaux & Dorsett, $48.74 be disallowed; and that the charge against him during the same year for the account of Carl Lawson, $43.00, be disallowed.”
*1241 It was further ordered by the decree that the proceedings in the suit entitled T. C. Lawless vs. Wilson McKerrall, Liquidator, be suspended, until said account has been filed, as herein ordered.
The controversy principally relates to the aforesaid errors which are charged to exist in the account which was filed by the liquidator.
These different proceedings were consolidated by consent in the District Court, and tried as one suit. It appears from the evidence, that the liquidator’s account shows a surplus of about six hundred dollars over and above debts, for division between the partners; but the liquidator as a witness states that the true surplus is twenty-one hundred dollars — -he having made collections since the filing of his account.
On the part of Lawless, the contention is, that the contracts of January 27th and 29th above referred to, are conclusive of the whole matter. That the liquidator has fulfilled his entire duty by collecting the bills and paying the debts stated on his account.
On the contrary, the contention on the part of Kyle is, that the exception contained in the contract shows an entirely different state of facts, and that the liquidator is required to pay off all the debts of the partnership, and that this has not been done. Counsel for Kyle contend that Lawless has retained the books of the-firm embracing entries from December 31st, 1892, to May, 1894, and has refused to surrender the same to the liquidator. It appears from the record that with the object in view of obtaining said books, Kyle took a rule on Lawless to produce them, and to his rule appended an affidavit setting forth the facts he expected to prove by the same. That an order was obtained from the court for the production of the said books; and on the trial of same, the rule was discharged.
In his answer to the rule, Lawless informed the court that he qould not produce these books because they had been destroyed. That they were destroyed with his consent, after Kyle had consented to dissolve the partnership.
Counsel for Kyle complains of the irregularity of this proceeding, and the great hardship imposed upon him thereby; and presses upon us the duty of making his rule absolute. We can not comply with that request.
Notwithstanding the proof discloses many suspicious circumstances in connection with the destruction of the books, and which lead to the *1242 supposition that Lawless’ intention was to suppress evidence against him, that does not justify us in making the rule absolute, after the trial judge had declined so to do.
We think the rights of all parties would be best subserved by relegating this question to the merits, as the case will have to be remanded for the purpose of enabling the liquidator to correct his accounts. We think the ends of justice would be attained by leaving the matter at large, so that on a trial of the merits in the District Court, both parties may offer testimony appropriate to the remedy sought. On the hypothesis that the books have been destroyed, it is certainly competent for both parties'to produce proof of their contents by any competent secondary evidence.
I.
. An examination of the evidence shows that, in respect to the amount of $800 for the value of a barge that was sunk in Vermilion Bayou in 1891, the testimony of each one of the two partners is in absolute contradiction of that of the other, thus making an issue of fact between them — Lawless swearing that Kyle took the barge which was property of the firm, “against his will and protest, for the purpose of carrying coal to Vermillion;” while Kyle states emphatically, that Lawless hired the barge to one Bagley, for thait purpose and that “Bagley employed him (Kyle) to tow the barge loaded with coal to that point.”
But Bagley testified that Kyle was not the lessee of the barges, but that he was, “and that it was so leased when it was sunk in Vermillion Bayou”; and his evidence turned the scale in favor of Kyle and relieved him from the obligation of accounting for the eight hundred dollar loss.
In thus deciding, we think the judge a quo was right.
II.
With regard to the transaction in reference to the failure of the liquidator to give Kyle credit personally for the amount of the Bonino check for $500, the proof makes it clear that Kyle had borrowed the money upon his individual credit for the use of the firm, and this amount was deducted from the account of Lawson for timber sold him by the firm; and this deduction was charged to the account of Kyle, but the five hundred dollars he had borrowed for the use of the firm *1243 was not credited to him. This correction we think the judge a quo properly made.
III.
The error of $700 against Kyle in the addition of his credits on the Recount, is not denied; and Kyle testified to the correctness of the three miscellaneous items which are claimed, while Lawless, as a witness, makes no statement in reference thereto; and therefore, they may be accepted as correctly allowed.
We notice the request for an increased allowance which the plaintiff makes in his answer to the appeal, but we think the ends of justice would be better subserved by reserving his right to urge same in the lower court, and we make the reservation accordingly.
Judgment affirmed. .