(169 App. Div. 423)

PEOPLE ex rel. KELLY et al. v. DOOLEY, Acting Chief Magistrate, et al.

(Supreme Court, Appellate Division, Second Department. October 26, 1915.)

1. MANDAMUS ⊂⟩10—OFFICERS—DUTIES—PERFORMANCE NOT REQUIRED BY LAW.

    Neither Inferior Criminal Courts Act (Laws 1910, c. 659) § 53, specifying the duties of the chief city magistrate in each division of the City Magistrates' Courts in the city of New York, nor any other statute, imposes upon the chief magistrate the duty of preparing, certifying, or forwarding a pay roll to the municipal civil service commission; and, no such duty having been imposed upon him by the action of the board of city magistrates, the Special Term had no authority to grant a writ of mandamus directing him to prepare, certify, or forward a pay roll containing the names of certain probation officers, with a statement that they had performed their duties as such officers, and were entitled to their several salaries, as mandamus will not lie to compel a public officer to perform a duty not imposed upon him by law, especially where some of such probation officers had not been deprived of any right to salaries, so that the writ improperly required the chief magistrate to certify to conditions that did not exist.

    [Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 37; Dec. Dig. ⊂⟩10.]

---

⊂⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. MANDAMUS ⟨⟩100—OFFICERS—FISCAL MANAGEMENT—BUDGET.

The creation of a budget, the matters therein contained, and their re-adjustment are exclusively within the jurisdiction of the administrative officers of a city government, and the courts have no power in mandamus proceedings to interfere with or supervise their action.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 205–210; Dec. Dig. ⟨⟩100.]

3. MANDAMUS ⟨⟩100—OFFICERS—FISCAL MANAGEMENT—BUDGET.

Under Greater New York Charter (Laws 1901, c. 466) § 237, providing that the board of estimate and apportionment shall have power to transfer any appropriation which may be found by the president of a borough, the head of a department, or other officer having control of the appropriation, to be in excess of the amount required, or deemed necessary for the purposes or objects thereof, to such other purposes or objects for which the appropriation are insufficient, or such as may require them, where the board of city magistrates in its departmental estimate provided for 10 male and 14 female probation officers, but the board of estimate and apportionment made an appropriation for the payment of 14 male and 7 female officers, and the board of magistrates requested a readjustment of the budget, so as to provide for the number of officers stated in the departmental estimate, the court had no power to compel the board of estimate and apportionment by mandamus to readjust its budget, so as to comply with the departmental estimate, especially as the exercise of the power conferred by that section is discretionary, and cannot be compelled by mandamus.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 205–210; Dec. Dig. ⟨⟩100.]

4. MUNICIPAL CORPORATIONS ⟨⟩890—OFFICERS AND EMPLOYÉS—PROBATION OFFICERS—POWERS OF MUNICIPAL AUTHORITIES.

Inferior Criminal Courts Act (Laws 1910, c. 659) § 96, provides that the female probation officers and civilian male probation officers of the board of city magistrates of the second division shall continue in office unless and until removed as therein provided; that the board of magistrates of such division shall appoint five civilian male probation officers, in addition to those thereby continued, and may appoint such additional officers as the board of aldermen, upon the recommendation of the board of estimate and apportionment, may authorize. Code Cr. Proc. § 11a, as amended by Laws 1910, c. 610, provides that no probation officer appointed thereunder shall receive compensation for his services until allowed by proper ordinance or resolution, and that the board of estimate and apportionment in the city of New York may in their discretion determine whether probation officers not detailed from other branches of the public service shall receive a salary, and, if they so determine, fix the amount thereof and provide for its payment. *Held*, that the board of estimate and apportionment is vested with the sole power of determining whether probation officers shall receive a salary, and this power may be exercised each year when they make up the budget, and the omission to include salaries therein constitutes a determination that probation officers thereby omitted shall not receive a salary; this not constituting the creation of any new office or the abolition of any existing ones.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1872; Dec. Dig. ⟨⟩890.]

5. MUNICIPAL CORPORATIONS ⟨⟩162—OFFICERS AND EMPLOYÉS—PROBATION OFFICERS—POWERS OF MUNICIPAL AUTHORITIES.

When the board of estimate and apportionment determines that a stated number of probation officers are to be paid a certain salary, and the number of officers then employed is greater than the number for

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

whom salaries are provided, it is for the board of city magistrates to determine which officers are to receive such salaries.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 357–367, 369, 372, 374; Dec. Dig. ⊚�longrightarrow162.]

6. MUNICIPAL CORPORATIONS ⊚⟶162—OFFICERS AND EMPLOYÉS—PROBATION OFFICERS.

Where the board of estimate and apportionment provides in the budget for salaries for a less number of probation officers than those employed, the probation officers not selected by the board of city magistrates to receive such salaries remain probation officers, possessing the power of such officers, but receiving no compensation for their services.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 357–367, 369, 372, 374; Dec. Dig. ⊚⟶162.]

7. MANDAMUS ⊚⟶100—OFFICERS—FISCAL MANAGEMENT—BUDGET.

Where the board of city magistrates in its departmental estimate provided for 10 male and 14 female probation officers, but the board of estimate and apportionment in the budget made an appropriation for the payment of 14 male and 7 female probation officers, if the board of magistrates did not appoint the 4 additional male officers for whom salaries were provided, their salaries remained in the treasury unexpended, and the court could not by mandamus compel the board of estimate and apportionment to readjust the budget to provide a salary for the additional female officers for whom they had provided no salary.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 205–210; Dec. Dig. ⊚⟶100.]

Appeal from Special Term, Kings County.

Mandamus by the People, on relation of Ellen D. Kelly and others, against Edward J. Dooley, as Acting Chief Magistrate of the Board of City Magistrates, and others. From an order granting a motion of the relators for a peremptory writ of mandamus, defendants appeal. Reversed and proceeding dismissed.

The parties hereto having stipulated in open court that a justice may be substituted in place of BURR, J., deceased, Mr. Justice PUTNAM was so substituted.

Argued before JENKS, P. J., and THOMAS, STAPLETON, RICH, and PUTNAM, JJ.

Terence Farley, of New York City (Arthur Sweeny, of New York City, on the brief), for appellants.

Frederick C. Gladden, of New York City, for respondents.

RICH, J. This is an appeal from an order of the Special Term, granting the motion of female probation officers of the board of city magistrates of the Second division, city of New York, for a peremptory writ of mandamus directing the appellant Edward J. Dooley, as acting chief magistrate, to certify to the municipal civil service commission of the city of New York, a pay roll containing their names, together with the amount of salary due to each from January 1 to January 15, 1915, with a statement that they have performed their duties as such officers and are entitled to their several salaries, and directing the other appellants, who compose the board of estimate and apportionment, to readjust their appropriation for probation officers as appearing in the budget of 1915, in such manner as to provide for pay-

ment of salaries of $1,500 per annum to each of 3 male probation officers, $1,200 to each of 7 male probation officers, $1,200 to each of 3 female probation officers, and $900 to each of 11 female probation officers, which readjustment would provide for and permit payment of such salaries to the relators and other appointed female probation officers.

There was no authority prior to the year 1904 for the payment of any probation officers, male or female. Although the appointment of such officers had been generally authorized by the provisions of section 11a of the Code of Criminal Procedure, the section contained a clause providing:

"No probation officer appointed under the provisions of this section shall receive compensation for his services as such probation officer."

In 1904, the section was amended (chap. 508) by inserting therein the following:

"The board of estimate and apportionment in the city of New York may, in their discretion, determine whether women appointed to act as probation officers, not detailed from other branches of the public service, shall receive a salary, and if they shall so determine, they may fix the amount thereof and provide for its payment."

The relator Hatfield was appointed in February, 1904, and the relator Peacock in May, 1906. In June, 1910, a law was enacted pertaining to inferior criminal courts of the city of New York (chapter 659, § 96, Laws of 1910), which provided:

"The female probation officers and civilian male probation officers of the board of city magistrates of the second division shall continue in office, unless and until removed as provided by this act."

The board of city magistrates was directed to appoint five civilian male probation officers in addition to those continued, and power was given the majority of the justices composing such board to appoint, from time to time, such additional probation officers as the board of aldermen, upon the recommendation of the board of estimate and apportionment, might authorize, and to remove such officers at pleasure. In the same year, by an act taking effect September 1st (chapter 610), section 11a of the Code of Criminal Procedure was amended so as to read in part as follows:

"No probation officer appointed under the provisions of this section shall receive compensation for his services as such probation officer until allowed by proper ordinance or resolution, as hereinafter prescribed. * * * The board of estimate and apportionment in the city of New York * * * may in their discretion determine whether probation officers, not detailed from other branches of the public service, shall receive a salary, and if they shall so determine, they may fix the amount thereof and provide for its payment, and they may also provide for the necessary expenses of probation officers."

The relator Hatfield ceased to be a probation officer prior to September 1, 1910, but was reappointed March 1, 1911. The relator Kelly was appointed March 30, 1912, the relator Virden September 27, 1912; the relator Holden October 31, 1912, and the relator Coyle January 16, 1913. They received in 1914 a salary of $900 each, with the exception of Miss Kelly, whose salary was fixed at $1,200. It is al-

leged in the petition that the departmental estimate required by section 226 of the charter of said city was sent to the board of estimate and apportionment by the acting chief magistrate of the Second division prior to September 10, 1914, and provided, so far as probation officers were concerned, for 10 male and 14 female probation officers, with salaries amounting in all to $26,400. The comptroller of the city denies this allegation (as to the gross amount of the salaries asked for), and says that the amount asked was $33,300, and his affidavit seems to be sustained by the departmental estimate itself, which shows, among other things, the amount of money requested by each department for the compensation of its officers. The board of estimate and appropriation allowed and appropriated $26,400 for the payment of 14 male and 7 female probation officers, which was an increase over the number of male officers requested of 4, and a decrease in female officers requested of 7. The board of aldermen adopted the budget on November 30, 1914, and on the 11th day of December following the board of magistrates adopted the following resolution:

"That this board request the board of estimate and apportionment to readjust the budget for 1915 in accordance with the provisions of section 237 of the charter to conform to a proposed schedule as follows: three male probation officers, at $1,500 per annum, $4,500; 7 male probation officers, at $1,200 per annum, $8,400; 3 female probation officers, at $1,200 per annum, $3,600; 11 female probation officers, at $900 per annum, $9,900—total, $26,400, so that the item of $26,400 may be used for the salaries of the probation officers now in office."

The number of both male and female officers stated in this resolution is identical with the number stated in their departmental estimate, and the gross amount of salaries is the same as that allowed by the board of estimate and apportionment and included in the budget. This resolution was received by the board of estimate and apportionment, and referred to its committee on tax budget for consideration and report, who later reported:

"(1) That the board should make no change in the budget for the Magistrates' Courts, Second Division, in so far as it relates to the number or salaries of men and women probation officers; that the action taken by the board should stand."

The report was adopted, and on February 1st following the board of city magistrates adopted the following resolutions:

"Resolved, that in accordance with the resolution of the board of estimate and apportionment we designate the following female probation officers to be retained at a salary of $1,200 per annum: Ellen D. Kelly, Elizabeth A. Hardoncourt, Myra P. Hughes, Ellen M. O'Grady, and Marie P. Holden; and Mary E. Hickey and Margaret Coyle at a salary of $900 per annum."

"Resolved, that the head of this department be instructed to comply with the provisions of section 1543 of the charter, with respect to those who are not designated."

Section 1543 of the charter then provided:

"Wherever in any department or institution an office, position or employment is abolished, or made unnecessary through the operation of this act, or in any other manner, or whenever the number of offices, positions or employments of a certain character is reduced, the person or persons legally holding the office or filling the position or employment thus abolished or made

unnecessary shall be deemed to be suspended without pay, and shall be entitled to reinstatement in the same office, position or employment, or in any corresponding or similar office, position or employment, if within one year thereafter there is need for his or their services."

[1] It appears that the relators Kelly and Coyle were retained at the same salary they received in 1914, $1,200 and $900, respectively, and the relator Holden was retained and her salary advanced from $900 to $1,200, and they can have no grievance or interest in the subject-matter. The remaining relators were by the action of the board of magistrates automatically suspended without pay by the provisions of section 1543 of the charter, if the action of the board of estimate and apportionment was valid and enforceable. Without considering the first contention of the appellants, which seems to be sound, I think that the order must be reversed upon the ground that the Special Term was without legal authority to compel the acting chief magistrate to prepare, certify, or forward a pay roll to the civil service commissioners or to compel the board of estimate and apportionment to readjust its budget.

No duty was imposed upon the acting chief magistate, either by statute or by the action of the board of city magistrates, to prepare, certify, or forward a pay roll to the municipal civil service commission. Section 53, chapter 659, of the Laws of 1910, to which our attention is directed by counsel for the respondents, and upon which he seems to rely, does not create or charge the magistrate with the performance of this duty, and mandamus will not lie to compel a public officer to perform a duty not imposed upon him by law. People ex rel. Jones v. Thompson, 147 App. Div. 150, 132 N. Y. Supp. 215. In addition to this, the evidence satisfactorily establishes that three of the relators, whom the writ commands the acting chief magistrate to certify are duly qualified and acting officers "and entitled to their several salaries," were not deprived of any right to salaries for services rendered during that year, so that the acting chief magistrate is improperly required by the writ to certify to conditions that do not exist.

[2, 3] The creation of the budget, the matters therein contained, and their readjustment, are exclusively within the jurisdiction of the administrative officers of the city government, and the courts have no power in proceedings of this character to interfere with or to supervise their action. People ex rel. Schwab v. Grant, 126 N. Y. 473, 482, 27 N. E. 964; People ex rel. Clapp v. Listman, 40 Misc. Rep. 372, 82 N. Y. Supp. 263, affirmed on opinion below 84 App. Div. 633, 82 N. Y. Supp. 784; 26 Cyc. 279. The respondents contend that under the provisions of section 237 of the charter the court has the power to compel the board of estimate and apportionment to so readjust its budget as that it will comply with the departmental estimate. The contention is without merit. Bird v. Mayor, etc., of New York, 33 Hun, 396; People ex rel. Daly v. York and Others, 66 App. Div. 453, 73 N. Y. Supp. 331, affirmed without opinion 171 N. Y. 627, 63 N. E. 1120; People ex rel. Trustees v. Town Auditors, 126 N. Y. 528, 27 N. E. 968. Besides, the exercise of the power conferred by the section is discretionary, and cannot be compelled by mandamus. See

O'Loughlin v. Board of Estimate, 87 Misc. Rep. 601, 150 N. Y. Supp. 12.

[4-7] The order should also be reversed upon the merits. The board of estimate and apportionment is vested with the sole power of determining whether probation officers, male or female, not detailed from other branches of the public service, shall receive a salary, and directs that if they so determine they shall fix the amount thereof and provide for payment. This power they may exercise each year when they make up their budget, and the omission to include salaries therein necessarily establishes that for such year their determination is that probation officers who are omitted shall not receive a salary. When they determine, as in the case at bar, that a stated number of the probation officers in a division are to be paid a certain salary, and the number of such officers then employed is greater than the number for whom salaries are provided, it is for the board of city magistrates to determine which of the officers shall receive such salaries. That is all the board of estimate and apportionment did in the budget of 1915. They did not create any new offices or abolish any existing ones. This they could not do. It was for the board of city magistrates to determine which of the female officers should receive the salaries, and they made their selection. Those who were not selected remain probation officers; they possess the powers of probation officers, but receive no compensation for their services. If the board of city magistrates did not care to appoint the four additional male probation officers for whom salaries had been provided, such salaries remained in the treasury unexpended; but there is no power in the court to compel the board of estimate and apportionment, under the guise of a readjustment of their budget, to provide a salary for the additional female probation officers whom they had determined should not, for that year, at least, receive salaries. The distinguishing fact that the sole power to determine whether probation officers should receive a salary is vested in the board of estimate and apportionment, present in the case under consideration and absent in the cases to which our attention is directed by the learned counsel for the respondents in his discussion upon this branch of the case, removes it from the operation of the rule he seeks to invoke.

The order must be reversed, with $10 costs and disbursements, and the proceeding dismissed. All concur.