O’NIELL, J.
The question in this case is whether the amount of the annual appropriation which the commission council of the city of New Orleans is required to make to the sewerage and water board, to maintain and operate the drainage system, is to be determined by the commission council itself, or by the sewerage and water board.
The board proceeded by mandamus to compel the commission council to include in its budget of expenses for the year 1922, and to appropriate from the city’s alimony, for the maintenance and operation of the drainage system, under the supervision and administration of the board, the sum of $424,000, being the board’s “estimate of the amount requisite for these purposes.” The commission council budgeted and proposed to appropriate only $188,140, which sum-, the council maintains, is all that is “necessary and prop-' er, over and above the receipts of said board for water rates, to maintain and operate in an efficient manner” the system of drainage. Judgment was rendered in favor of the board, making the writ of mandamus peremptory, and the commission council has appealed. There was also a demand for an appropriation of $8,750, being the city’s usual annual contribution to the maintenance and operation of the Jefferson-Plaquemines drainage district, which appropriation was budgeted and is not in contest.
*941 [1] The case depends upon the interpretation of section 28 of Act 6 of the Extra Session of 1899 (creating the sewerage and water board), as amended by Act 111 of 1902, p. 179, viz.:
“The city of New Orleans shall annually in her budget of expenses provide out of her alimony by proper appropriation, all the funds necessary and proper-over and above the receipts of said [sewerage and water] board for water rates, to maintain and operate in an efficient manner the said public systems of sewerage and drainage and the said public system of waterworks, inclusive of interest and sinking fund of any assumed mortgage bonds thereon, and the said board shall in the first week in November of each year, present to the council an estimate of the amount requisite for these purposes for the following year. No portion •of the proceeds of said public improvement bonds or of the said taxes shall ever be applied to the .maintenance and operation of said public systems of sewerage, water and drainage, but they shah be used for construction purposes only.”
By a provision in article 313 of the Constitution of 1913, the city was relieved of the obligation of providing, in its annual budget of expenditures, for the maintenance and operation of the systems of sewerage and waterworks, and the board was authorized to use for those purposes its collections from water rates, and to use any surplus of such receipts for the maintenance and operation of the drainage system. Therefore, as the law now stands, the city is required to appropriate annually the funds necessary and proper (over and above any surplus of receipts from water rates remaining after paying the cost of maintenance and operation of the sewerage and waterworks) to maintain and operate in an efficient manner the system of drainage, under the supervision and management of the sewerage and water board. And the board is required to present to the commission council, in the first week in November of each year, “an estimate of the amount requisite for these purposes for the following year.”
The attorneys for appellant contend that the language of the statute does not purport to give the sewerage and water board authority to determine the amount to be appropriated, but leaves it to the municipal council to appropriate whatever sum the council may, in its discretion, deem necessary and proper for that purpose.
In support of their contention, the attorneys for appellant argue that, if the statute should be construed as giving the sewerage and water board the authority claimed, it would be violative of article 319 of the Constitution of 1898 (and of 1913, and section 22 of article 14 of the Constitution of 1921), reserving to the electors of the city of New Orleans the right to choose all officers charged with the exercise of any of the police powers of the city.
If the obligation which the statute imposes upon the municipal council to appropriate “all the funds necessary and proper” for the maintenance and operation of the drainage system “in an efficient manner” were not qualified by the subsequent explanation that the sewerage and water board shall “present to the council an estimate of the amount requisite for these purposes,” the inference might be that the municipal council is invested with the discretion to determine what funds shall be “necessary and proper” for the board to spend. But the only estimate that the statute mentions is that which the board shall make. That this annual requisition of the board is only an estimate is not significant, because nothing more accurate than an estimate could be made in advance by either or anybody. We have no authority to write into the statute that the municipal council may, in its discretion, reject the board’s estimate, or revise it to suit the council’s idea of efficiency and economy in the board’s management of its affiairs. The Legislature had to confer upon either the commission council or the sewerage and water board the authority to determine, ab *943 solutely and finally, the amount of the annual appropriation to be made for the maintenance and operation of the drainage system. There could be no middle ground or division of authority in that respect; for the courts have not the authority or jurisdiction to administer the municipal affairs by passing judgment upon a disagreement in the estimate of the commission council and of the sewerage and water board of all the funds necessary and proper or requisite for the efficient operation and maintenance of the city’s drainage system. It is not our province to make an estimate, or to say whose estimate is correct. All that we have to decide is whose estimate shall prevail. We are speaking, of course, of a case where there is no abuse of authority; for that is the case before us. The fairness and accuracy of the board’s estimate is as well established, by the testimony of men of expert knowledge and experience, as it could be; and there is no evidence whatever of extravagance on the part of the board. We have no doubt of the good faith of the commission council in undertaking to reduce the expenditures of the sewerage and water board for the maintenance and operation of the drainage system. But we do not know whether the curtailment proposed by the municipal council would result in- more economy or less efficiency in the maintenance and operation of the drainage system. In. that regard the sewerage and water board has the responsibility, and with it the authority.
The municipal council has appropriated for each of the last 12 years a sum considerably less than the estimate made by the sewerage and water board. But the precedent so established is not important, because the board has actually spent more each year than was appropriated by the council. A large fund had gradually accumulated from the hoard’s collections from consumers of water. When this fund was released, and made available for maintenance and operation, in 1913, the hoard commenced drafting upon it; and it has been almost entirely exhausted because of the deficits in the annual appropriations made by the municipal council.
[2] The argument of appellant’s counsel that it is less objectionable that the sewerage and water board should be dependent for its resources upon the liberality of the municipal council than that all other departments of the municipal government should have to abide the estimate of the sewerage and water board for the cost of maintenance and operation of the drainage system alone is a subject for the Legislature to consider. It is not charged in this case that there is any exaggeration, imposition, or overreaching on the part of the sewerage and water board in its estimate of the necessary expenditures for this year. It is true, the reason — and the only specified reason — given by the commission council for refusing to make the appropriation demanded by the board was that the board had refused a request of the commission council to have the board’s affairs investigated by a committee appointed by the council to ascertain whether any economies might be accomplished in the management of the board’s affairs. In response to the request, the board merely declined to recognize that the committee so appointed had any official capacity or authority in the premises, but invited the members of the committee, as individuals, citizens, or taxpayers, to make any investigation or suggestion that they might deem proper. The board also reminded the municipal council that the board’s records were open to the public; that its meetings were all held in the municipal council chamber, and were also open to the public ; and that the municipal council was well represented in the membership of the board. It appears that, of the five members of the commission council, four are ex officio members of the sewerage and water hoard, namely, the mayor, the chairman of the finance *945 committee, chairman of the committee on budget and assessment, and chairman of the committee on water, drainage, and sewerage. It appears, too, that the mayor, with the consent of the municipal council, appoints all other members of the sewerage and water board. See section 8 of Act 111 of 1902, p. 171, as construed in State ex rel. Saunders v. Kohnke, 109 La. 838, 33 South. 793.
[3] Whether it would be better for the sewerage and water board to be allowed to adjust its water rates so as to make the utilities under its supervision and control independent of appropriations from the municipal council, and self-sustaining, is a matter for the Legislature to consider. The Constitution of 1921, art. 14, § 23, expressly allows the Legislature to authorize the sewerage and water board to make its water rates provide for the cost of maintenance and operation of the waterworks, sewerage, and drainage systems, and all extensions, replacements, repairs, and betterments thereof.
[4] Our interpretation of section 28 of Act 1.11 of 1902 does not conflict with article 319 of the Constitution of 1898, in force when the statute was enacted. Article 320 declared that article 319, reserving to the electors of the city the right to choose their public officials, should not be construed as prohibiting the establishment of boards of commissioners to be elected by the municipal council or appointed by the mayor with the consent of the council; and the same proviso, substantial!}7, was retained in article 319 of the Constitution óf 1913, and in section 22 of article 14 of the Constitution of 1921.
[6] Before answering this suit the commission council filed a plea or exception of no cause or right of action. The argument in support of the plea is that this is not a case for which mandamus is the remedy. Our opinion, to the contrary, is that the case is one for which mandamus is the only appropriate remedy. Mr. James L. High, in his Treatise on Extraordinary Legal Remedies (3d Ed.) § 324, pp. 310 and 311, says:
“It may be affirmed as a general rule, sanctioned by the best authorities, that, when a plain and imperative duty is specifically imposed by law upon the officers of a municipal corporation, so that in its performance they act merely in a ministerial capacity, .without being called upon to exercise their own judgment as to whether the duty shall or shall not be performed, mandamus is the only adequate remedy to set them in motion, and the writ is freely granted in such cases, ordinary remedies at law being unavailing [citing decisions from fourteen courts of last resort]. As illustrating the rule, it is held that, when county commissioners are required by a plain and positive statute to set aside a certain portion of the county funds annually for a specific purpose, and have refused to perform this duty, they may be compelled to act by mandamus. * * * And, when a board of municipal officers is required by law to raise for the support of the poor so much money annually as may be fixed by another board, intrusted with full power as to determining the amount thus to be raised, the duty of raising the money may be enforced by mandamus, there being no discretion left to the officers, and their duty being purely of a ministerial nature” [citing Ex parte Common Council of Albany, 3 Cow. 358].
In State ex rel. Francis T. Nicholls, Governor, v. City of New Orleans et al., 41 La. Ann. 156, 6 South. 592, this court affirmed the right of the Governor to compel the may- or and council of the city of New Orleans, by mandamus, to obey section 20 of Act 63 of 1888, providing:
“The common council shall set aside in the budget of expenses, a sum equal to that required according to the estimate made as aforesaid, by the police board; provided, that said council shall have the right to reduce said estimate to a sum not less than one hundred and fifty thousand dollars [$150,000] for the police department, including the amount to be received ijrora the wharf lessees, whenever the revenues of the city will not justify or permit a larger appropriation.”
In State ex rel. Board of Health v. City of New Orleans, 37 La. Ann. 894, where the court dismissed the proceeding by mandamus, the statute expressly left the amount to *947 be appropriated for tbe expenses of tbe board in the discretion of the municipal council, by saying that the council should “make such appropriation as by it might be deemed necessary.” (The italics are ours.) In State ex rel. Board of Health v. Common Council, 52 La. Ann. 1236, 27 South. 572, where the court again dismissed the mandamus proceeding, the statute did not confer upon the board the authority to make an estimate of the amount to be appropriated for its expenses, but merely required the municipal council to “provide ample means for the maintenance and operation of said board,” and to pay “all necessary expenses, costs and charges of local sanitation.” In the case of Hover v. People, 17 Colo. App. 375, 68 Pac. 679, the statute of Colorado, as amended, merely required the city council of Denver to use the estimates of the board of commissioners of the fire and police departments as a basis for the city council’s annual appropriations for the fire, police, and detective departments, and to conform thereto as nearly as the condition of the city finances would permit. The court held that, under such a statute, the city council was the judge of what appropriation the condition of the city finances would permit. The decision by the Supreme Court of Minnesota in State ex rel. Ames, Mayor, v. Minneapolis, 87 Minn. 156, 91 N. W. 298, had reference to a statute directing the city council to appropriate annually a contingent fund of $5,000 for the use of the mayor. The ruling, dismissing the mandamus proceeding,' seems to have been based upon the relator’s having failed to show any necessity for the appropriation. At any rate, the case is not analogous to the one before us. In People ex rel. Kelly et al. v. Dooley, 169 App. Div. 423, 155 N. Y. Supp. 326, where the court dismissed a mandamus proceeding to compel the board of estimates and apportionments of the city of New York to readjust its budget of appropriations for probation officers so as to provide salaries for the relators and other female probation officers, the statute had left the matter of estimates and apportionments in the discretion of the board. The relators in that case, unlike the relator in the case before us, had no statutory authority whatever in the premises.
The judgment appealed from is affirmed.
PROVOSTY. C. J., and DAWKINS, OVER-TON, and BAKER, JJ„ dissent.