ROGERS, Justice.
 

 Defendant appeals from a judgment making a writ of mandamus peremptory, ordering defendant to reinstate relator to his former position, and directing defendant to pay relator his monthly salary from the date of his discharge.
 

 Henry I. Pepper, the relator, was employed as a steam fireman by the Sewerage & Water Board of New Orleans on August 25,1906. On entering defendant’s employ, relator was examined and qualified under the civil service laws applicable to the position, particularly Act No. 89 of 1900 and Act No. Ill of 1902.
 

 Relator was originally assigned to station No. 5, where,he performed the duties of fireman until October 31, 1918, when steam power was replaced by electric power. Relator was thereafter classified as a helper at the same station, his duties being to assist in the repairing of pumps and' screens, painting, etc., and to assist generally in the operation ■ of the station. His status as a civil service employee was confirmed in writing by the defendant board on December 5, 1928. In September, 1930, relator was transferred to station No. 6, where he continued to perform the
 
 *743
 
 same character of work for the same remuneration.
 

 On April 25, 1931, relator received notice in writing from the defendant that his services would be dispensed with on April 39, 1931. This was the first intimation received by relator, who had been in defendant’s employ for twenty-five years, that he would be dismissed, no charge having been preferred against him and the satisfactory character of his work never having been questioned at any time.
 

 Relator’s position was not abolished, but, on the contrary, was immediately filled by one Brasselman, another employee of defendant, who performed the same services and received the same pay as relator.
 

 Relator promptly sought reinstatement through his personal efforts, and when these failed he employed counsel, who, on July 29, 1931, demanded in writing that the defendant board reinstate relator. On July 28, 1931, relator’s counsel was advised by defendant that his demand had been referred to defendant’s special counsel. On August 6, 1931, the defendant advised relator’s counsel that the matter would be given consideration at the next regular meeting of the executive committee of the defendant board. On August 12, 1931, relator’s counsel wrote defendant for information as to when the next meeting of the executive committee would be held, and on August 21,1931, defendant advised that counsel would be notified a few days before the ■next meeting. On September 4, 1931, defendant addressed a letter to relator’s counsel, inviting him to be present at a meeting of defendant’s executive committee, to be held on September 9, 1931. Relator attended the meeting, but as nothing favorable to his cause resulted therefrom, he finally sought relief by this suit, which he instituted on February 11, ' 1932.
 

 Respondent’s defenses to relator’s action are, first, that relator was guilty of laches in waiting too long to bring his suit, and, secondly, that relator’s services were dispensed with in the interest of economy, and that, not being a necessary employee, relator’s discharge was authorized by section 13 of Act No. Ill of 1902.
 

 The necessity for prompt action on the part of a public employee who is unlawfully removed from his position is so generally recognized by the courts that we deem it unnecessary to cite any of the cases exemplifying the rule. We think it suffices to say that the principle underlying all the decisions is based on considerations of public policy, so that an aggrieved employee should promptly take effective action to assert his rights, to the end that if he is successful ■ in his action the public service may be disturbed as little as possible and two salaries may not be paid for but one service.
 

 On the other hand, in legal significance, laches is regarded as not mere delay, but delay that works a disadvantage to another. Hence, there is and can be no fixed rule for determining what constitutes prompt action on the part of an aggrieved public employee to effectively assert his rights. Each case must depend upon its own peculiar facts. The question is one that calls for the exercise by the court of its sound discretion.
 

 Relator never acquiesced in nor assented to his discharge by defendant. On receiv
 
 *745
 
 ing notice of his discharge, he promptly took up personally with defendant the question of his reinstatement. He also promptly employed counsel through whom negotiations were had with the defendant looking to a peaceful settlement of the controversy. It was only after the meeting of defendant’s executive committee on September 9, 1931, that relator became convinced that these negotiations would lead to naught, and within a reasonable time thereafter he brought his suit. It may be that he could have filed his suit a few days sooner than he did, but, even so, he ought riot to be turned put of court on that account. The delay, if it were a delay, worked no disadvantage to defendant. The conditions and relations of the parties were not changed or materially impaired. Defendant persisted in its discharge of relator with full knowledge of relator’s rights, relator’s insistence upon their recognition, and relator’s employment of counsel to enforce them.
 

 Our conclusion is that under the peculiar circumstances of this case, as disclosed by the record, the defense of laches is not well founded.
 

 Relator was a classified civil service employee at the time he entered defendant’s service and at the time he was discharged. And relator contends that his discharge was unlawful and in violation of the civil service laws. He 'relies, in particular,' on section 11 of Act No. 89 of 1900 (the New Orleans Civil Service statute) which reads, in part, as follows, viz.: “That no ofiicer or employee in the civil service who shall have been appointed under the rules of said classified service and after said examination, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense.”
 

 Respondent contends that the Civil Service Act No. 89 of 1900 must be read in connection with Act No. Ill of 1902. Section 13 of this act after providing that all employees, except unskilled labor, of the Sewerage & Water Board, shall be subject to civil service examinations and shall be removable only for cause and after hearing by the Civil Service Commission, further provides: “Nothing herein shall be construed as preventing the Board from dispensing with the services of unnecessary employees.”
 

 Respondent contends that relator was only one of thirty employees classified as helpers and assigned to the nine stations operated by respondent. That none of these employees were placed definitely at any station, but were shifted from one station to another as the needs of the service required. Respondent also contends that the nature of the work and not the particular station where these employees worked must be considered. That relator was not replaced by any one, Brasselman, who succeeded him enjoying the same classification as relator. That relator was not a necessary employee and was therefore subject to dismissal under the authority of the provisions of section 13 of Act No. Ill of 1902 which we have hereinabove quoted.
 

 It may be true that relator was one of thirty of defendant’s employees classed as helpers, but the record does not show that these employees were shifted from station to station. In relator’s case, it is shown that he remained at station No. 5 from August 25,1906, the date of his employment, until September, 1930, a period of twenty-four years, when he was
 
 *747
 
 transferred to station No. 6, where he continued to be employed until the time of his discharge.
 

 The record affirmatively shows that the work perfqrmed by relator was necessary work. It also shows that relator’s position was not abolished, but was immediately filled •on his discharge by the appointment thereto •of William Brasselman, another employee of •defendant. Brasselman performs the same work as relator performed and he receives a ¡salary of $122 per month, which is the same ¡salary relator received. The testimony dis•closes that there are the same number of employees at station No. 6 doing the kind of work relator was doing after relator’s discharge as there were before his discharge.
 

 Relator was not an unskilled laborer. This is shown by the nature of his work, his compensation therefor, and his classification as a civil service employee. Considering these things, we think that relator’s position was under the protection of the civil service laws, and that relator could not be removed therefrom except in the manner provided by those laws.
 

 We recognize the right of the respondent to discharge those employees for whom, under the fair and reasonable requirements of its business, it has no need, even if they be under civil service. But in dispensing with relator’s services, the specific requirement that they were unnecessary, because the position which he held was unnecessary, was not shown to exist. The fact that the position held by Brasselman was abolished, while it might justify the dismissal of Brasselman as an unnecessary employee, did not authorize the defendant to discharge relator, who had been defendant’s faithful and efficient employee for twenty-five years, and give his position to Brasselman, who had been in defendant’s employ for a much shorter period of time.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 BRUNOT, X, dissents.