This is a mandamus proceeding brought in the name of the State of Louisiana, on the relation of Edward E. Richardson, against the Board of Trustees, Teachers' Retirement System of Louisiana and Patterson C. Rogers, Secretary-Treasurer of the Board, acting in his capacity as executive officer of the Teachers' Retirement System.
The relator, Richardson, was not eligible for retirement under the Teachers' Retirement System as provided for by Act 83 of 1936. However in 1940 the Legislature passed another act in which it made available, proceeds for those teachers who were not eligible for benefits under the System, or for those who, although eligible, would receive so little upon retirement that they would hardly be able to provide for themselves the necessities of life. That was Act 216 of 1940. It specifically provided for disability payments to any teacher "who is now, on account of physical or mental disability, totally and permanently incapacitated for teaching service and who became so while in active service in the public schools of Louisiana." The allowance for any such disability benefits was to be computed in the same manner as for those teachers who were eligible for retirement under the System with the exception, that the "minimum annual allowance shall not be less than one-third of the average salary received for the last five years of service." The act of 1940 provided further that during the month of July for the next two years, beginning July, 1940, the State Treasurer had to pay to the Teachers' Retirement System from the avails of the State Public School fund, the sum of $30,000, or as much thereof as would be needed for the purposes set forth in the act. The Board of Trustees of the Retirement System had to determine annually the amount required to pay the cost of the benefits provided for in the act and certify such amount to the State Auditor.
Act 216 of 1940 was presented to the Legislature as House Bill No. 320 and, as shown from the record in this suit, the Secretary-Treasurer of the System, in administering the law, kept different bank accounts for the different funds under control of the Board and the funds provided for by that act were kept in an account which he designated as "House Bill No. 320 Fund."
In 1942, the Legislature again passed an act, being Act No. 108 of that year, in order to "dedicate or allocate" out of the State Public School Fund, the sum of $20,000 annually or so much thereof as might be necessary, beginning with the fiscal year beginning July 1, 1942, to be paid by the State Treasurer in the same manner as were the funds to be so paid by him under the terms of Act 216 of 1940.
The relator in this case became a disability annuitant on October 26, 1941, effective November 1, 1941. During the last five years of his service, his annual salary was the sum of $2936, one-third of which amount is the sum of $978.67. He was qualified as a disability annuitant but through inadvertence or error on the part of those administering the Teachers' Retirement System was paid at the rate of $600 per year throughout the period from November, 1941 through July, 1944, that being the Maximum amount allowed for any person approved for assistance under the old age provision of Act 216 of 1940 as well as Act 108 of 1942. By the provisions of Act 228 of 1944 that maximum allowance was raised to the sum of $700 and accordingly, under the same inadvertence or error, as to his status, he received $700 for the period running from August 1, 1944 to May 31, 1946.
He has instituted the present proceeding in order to have his status correctly recognized by the Board of Trustees and to compel them to pay him the difference in the amount he was justly entitled to receive and the amount actually paid him and also to compel them to pay him at the proper rate each year from now on.
In his petition he sets out that there was, for each year during which he should have received the full amount to which he was *Page 491 
entitled, a surplus of receipts over expenditures in the account designated as "House Bill No. 320 Fund" to take care of those teachers who were included within the provisions of the Acts of 1940 and 1942. That the funds in that account had been designated and allocated for the purpose of taking care of those teachers and that notwithstanding the transfer of the surplus remaining at the end of each year in the fund to some other account, it still remains under the control and management of the Board of Trustees of the System and as there is more than a sufficient amount to pay him the difference to which he is entitled, that is the sum of $1551.90, as of the date on which he filed this proceeding, the Board should be made to pay him that amount.
The defendants appeared in answer to the alternative writs of mandamus which had been issued against them and whilst generally admitting the facts set out by the relator in his petition, aver that the relator waited until July 9, 1944 before presenting a final demand for the claim he now makes. They admit nevertheless that he had visited the office of the Board on several occasions prior to that date and also that his counsel of record had made a written demand before filing suit. The defendants then at length set out the method by which the funds provided under the whole system were administered, contending that it has been administered in the interest of all teachers eligible to participate in any of the funds and that all of the funds have been used in accordance with the provisions of the different acts to liquidate the service credits provided for in each, or have been returned to the State Treasurer to be credited to the State's General Fund and there remains now in their custody an amount sufficient only to pay and discharge the obligations imposed upon the Board by the terms of the said acts for the current month or until the close of the present fiscal year and the current biennium.
After trial in the lower court there was judgment in favor of relator decreeing that the alternative writs of mandamus be made peremptory and that the defendants be ordered to pay the relator the sum of $1501.90, and in addition thereto to issue monthly checks to him at the rate of $978.67 per annum, beginning June 1, 1946 until terminated by law. The discrepancy of $50 between the amount demanded and the amount in the decree of the judgment is accounted for by a remittitur tendered on behalf of the relator during the trial of the proceeding.
From the judgment rendered the defendants have taken this appeal.
It now appears that all the issues in the case have been cleared except on the right of the relator to proceed by way of mandamus and, if he has the right to so proceed, that by reason of the disbursements made over the period of years from the fund out of which his claim of $1501.90 should have been paid, and, in effect, the depletion of that fund, it is impossible to comply with the decree of mandamus. In other words the appeal, as stated in briefs that have been submitted, is only from that part of the judgment ordering the defendants to pay the claim of $1501.90 That of course, carries an admission that the relator's contention with regard to the amount to which he is entitled annually is correct.
One of the points raised against the proceeding by mandamus is that the relator had some other remedy at law which he should have pursued and that he should not have been permitted to resort to mandamus. It is stated that he should have proceeded to obtain relief to which he is entitled for the amount past due by having obtained permission to sue the State and have the Legislature make the necessary appropriation with which to pay his claim.
[1, 2] The State however is not indebted to relator. It had already made necessary provisions with which it is charged by law, to pay what he was entitled to receive under the Acts of 1940 and 1942. Besides, the relief he is seeking is from an agency administering a fund from which he was entitled to be paid. He is not seeking to obtain a judgment against the Board of Trustees of the Teachers' Retirement System but is merely asking that Board to comply with the law by paying him what he claims he is justly entitled to under the law which they are administering. *Page 492 
It is now settled to a point where it is no longer disputed that mandamus will lie to compel a public officer to perform a plain duty that is made ministerial by statute. That question was presented in two recent cases, Dupuy v. Jones, La. App.,15 So.2d 528 and State ex rel. Nunez v. Baynard et al., La. App.,15 So.2d 649. In the latter case there was some inquiry as to how far the court could compel mandamus against a public officer in the performance of an act in which he exercised some discretion. But in this present case there was no discretion given to the Board and as the officer administering the Retirement System under the various statutes, the Secretary-Treasurer of the Board had no other alternative but to carry out the provisions of those statutes and pay those who were entitled to receive benefits under them. Besides, from the very fact that these defendants now recognize that the relator had the right to compel them to pay from the time he filed his proceeding, the amount he claims monthly, they impliedly admit that his mandamus proceeding, to that extent, is proper and therefore, in our opinion, if it is to be held improper it has to be on some other ground than the one that he had another remedy at law.
[3, 4] Another ground they urge is, that by his laches in making formal demand, and also by his having accepted the amounts which were paid to him, he is now estopped from claiming these back payments. They have not pleaded laches or estoppel nor have they pleaded that his demand for these back payments is prescribed. Those are all special pleas and should have been so made. In Art. 26 of their answer they make some allegation from which it might be inferred that they meant to charge the relator with laches but even so they admit that prior to filing suit he had made frequent visits to their office and we take that to mean that these were in connection with his status and to advise that he was not receiving the payments he was entitled to. Over and above all this, they were the ones charged with administering the funds and seeing to it that those entitled to benefits under the system, received each, what was coming to him. The law presumes that those charged with administering a law will do so in a prompt and efficient manner and those who are to receive benefits under that law have a right to expect that they will do so.
[5, 6] In considering the question of estoppel we deal with a plea in which it is generally implied that the one who pleads it does so on the ground that by the conduct or action of another he has been led to do something or to follow a course which he otherwise would not have pursued and which resulted in some detriment or loss to himself. Certainly in this case the officer charged with the administration of the retirement system cannot possibly claim to have been misled by the relator to the disadvantage of the Board of Trustees. He himself administered the fund and he had available an actuary to whom he had to refer the matter each year to find out approximately how much money would be required to meet the claims of all those who were eligible to participate. If anyone was misled in any way it looks to us as though it was the relator who had a right to rely on a proper administration of that fund, as far as he was concerned, and by no reasoning we can think of should he, because he pursued the course he did, be held estopped from claiming what was justly due him from the fund.
This takes us now to what we believe is the more serious question urged and that is the contention of the defendants that they have no funds available with which to comply with the order to pay relator the sum of $1501.90. The matter of whether there are funds available or not is one which has to be determined from the manner in which the surplus from the funds set up with which to pay those eligible under the Acts of 1940 and 1942 was handled by the Board of Trustees of the Retirement System. It does not seem to be disputed that from 1940 until 1945 there were balances in the fund each year and for two of those years there were more than sufficient funds to pay the full amount due relator. In another year the balance was almost as much as the amount of his claim. Taking into account the total of all of those balances there would of course *Page 493 
be an amount far in excess of the amount that is due him.
[7] The point is made by defendants that the funds derived from the Legislature with which to pay these retired teachers the benefits under these acts were appropriated funds and that the balance of any appropriation made by the Legislature which has not been used for the purpose intended, goes back to the State Treasurer and cannot be used again for any specific purpose until it is again appropriated. But when we consider how the funds were made available to meet the benefits under the acts, we agree with counsel for the relator that they were not appropriations made by the State Legislature. The statutes themselves do not contain the word "appropriation." Act 216 of 1940 prescribed that the State Treasurer "shall pay to the Teachers' Retirement System of Louisiana from the avails of theState Public School Fund the sum of Thirty Thousand Dollars ($30,000.00) or as much thereof as may be needed for the purposes hereinafter set forth." Act 108 of 1942 prescribes that "there is hereby dedicated or allocated out of the StatePublic School Fund of the State of Louisiana the sum of Twenty Thousand Dollars ($20,000.00) annually, or so much thereof as may be necessary, etc." (Italics ours.) Those provisions merely made an allocation of funds that had already been appropriated to the State Public School Fund, and these funds were to be used in carrying out the provisions of the Teachers' Retirement System under the various acts of the Legislature. As shown by this record they were under the control and management of the Board of Trustees of that System. It was impossible to know exactly what the amount required would be each year and that is why the statutes themselves provided that a certain amount, orso much thereof as may be necessary is allocated for the purpose. Besides the Secretary who administers the funds testified that each year he did not certify any amount to the Board until it had been determined by an actuary, whose services seemed to have been necessary, in order to determine the sum required as near as possible. It developed each year, for several years, that there was a surplus left, as naturally was to be expected, and the matter of transferring that surplus from one fund to another appears to have been merely an arbitrary method adopted by those in charge of the administration of the funds for the purpose of bookkeeping or perhaps some other purpose with which we are not concerned in this suit. As far as we are able to make out, from the system used in keeping the various accounts, the funds are still there and are available to and controlled by the Board of Trustees.
It is urged further that to pay relator's claim from the General Fund might jeopardize the interests of other teachers who may become eligible to benefits from time to time. But it was not shown how anyone's interest might be so affected.
Assuming that there was a balance at the end of each year in the fund known as "House Bill No. 320 Fund" and for some purpose or other it was deemed more satisfactory or proper by the Board to transfer that balance to another account known as the "Board of Trustee Fund" or the "General Fund" this would seem to us to make no difference whatever, as the question'involved seems to be one merely of accounting or bookkeeping and that being so this relator should not be deprived of his benefits under the law no matter from what fund, under the control and management of the Board, his claim can be paid. None of the statutes as far as we can find require any particular method of keeping or transferring balances from any of these particular funds to another and it does not lie within the province of those charged with the distribution of it to arbitrarily manipulate the fund in such a manner that they can tell an eligible teacher that they have no money with which to pay him a claim which they recognize is justly due.
The judgment appealed from which ordered payment is correct and it stands affirmed. *Page 494