TATE, Judge.
This is a suit by a tenured bus driver to recover unpaid salary for a period following the allegedly illegal discontinuance of his school bus route. The trial court sustained a plea of estoppel and laches filed by the defendant school board, and the plaintiff appeals from the consequent dismissal of his suit.
The plaintiff had been employed for approximately six years by the defendant school board as the driver of a publicly owned school bus. He was therefore a tenured school bus driver. See LSA-R.S. 17:491-493. On August 28, 1958 the defendant school board adopted a motion to discontinue the operations of all publicly owned buses; it also consolidated several school bus routes because of the small number of children to be served in the areas concerned. On that same date, the parish superintendent of education wrote the plaintiff informing him that his school bus route had been discontinued.
The plaintiff immediately turned over his bus to the local school principal. It is admitted that the plaintiff did not complain to the principal or to any one connected with the school board at that time or thereafter for almost a year. It was not until August 26, 1959, when the school board received a letter from the plaintiff’s attor *444 ney, that the school board was notified that the plaintiff intended to question as illegal his discharge on August 28th of the proceeding year. The present suit was filed on the day following receipt of the letter.
Under LSA-R.S. 17:473 no permanent school bus operator can be removed because of the “abolition, discontinuance or consolidation of the route he serves” without prior advance notice to the employee preceding a formal hearing by the school board to determine that such reduction of the bus service is in the best interest of the school system. (In fact, immediately after the present suit was filed, the defendant school board, “as a precautionary measure against liability”, ordered a formal hearing on the consolidation of the bus routes and the discontinuance of the present plaintiff’s route, and no contest is or was made as to the school board’s finding at such hearing on November S, 1959 that the plaintiff’s bus route was unnecessary and should be terminated.)
It is the plaintiff’s position that he is entitled to receive his unpaid salary between the date of his illegal discharge, August 28, 1958, up through November 5, 1959, because it was not until this latter date that his discharge was accomplished in accordance with law.
His very able counsel in an excellent brief stresses the important public policy objectives-of the school bus operator and teacher tenure acts and the legislative mandate that no such tenured school employee máy be discharged except in accordance with statutes, he being otherwise entitled to retain his position and to draw his pay. But conceding the important protective nature of this legislation, we nevertheless find that the trial court properly dismissed this suit because of the delay of one year less two days following the illegal discharge before the plaintiff notified the school board that the legality of the discharge was contested.
As was recently re-stated in Fields v. Rapids Parish School Board, 231 La. 914, 93 So.2d 214, 215:
“ ‘Sound public policy requires that an employee of a public body who claims to have been illegally discharged should press his claim for reinstatement with diligence and without unnecessary delay. The rule that laches on the part of such public employee will bar his claim for reinstatement is not based on any law of prescription or limitation of actions, but it arises from reasons of public policy. The processes of government must go on and employees and officials must be paid out of public revenue for carrying on the functions of government.’ ”
The claims of discharged school employees for salary and/or reinstatement because of allegedly illegal discharges have been held to be barred by laches where such claimants had similarly delayed for a year or less to assert their claim by suit. State ex rel. Eberle v. Orleans Parish School Board, 221 La. 243, 59 So.2d 177; State ex rel. McMurry v. Orleans Parish School Board, 189 La. 502, 179 So. 834; State ex rel. Calamari v. Orleans Parish School Board, 189 La. 488, 179 So. 830; Williams v. Livingston Parish School Board, La. App., 1 Cir., 191 So. 143.
Counsel for appellant skillfully seeks to avoid the application of this jurisprudence by pointing out that, in the present instance, the school board did not suffer detriment by the payment of a duplicate salary to another employee replacing the claimant. For as was stated in State ex rel. Pepper v. Sewerage & Water Board, 177 La. 740, 149 So. 441, 442, “ * * * in legal significance, laches is regarded as not mere delay, but delay that works a disadvantage to another. Hence, there is and can be no fixed rule for determining what constitutes prompt action on the part of an aggrieved public employee to effectively assert his rights. Each case must depend upon its own peculiar facts. The question *445 is one that calls for the exercise by the court of its sound discretion.”
We do not think that the cited jurisprudence can be restricted to require that the payment of a duplicate salary be the only disadvantage caused by a public employee’s delay to file suit that can justify its dismissal on the ground of laches. As the cited jurisprudence indicates, the protection of the public fisc and of orderly administration of governmental processes requires that public employee must assert promptly any claim to recover unpaid salary following an illegal discharge, in order to avoid the unnecessary dissipation of public funds needed for public purposes and their use instead to pay unearned salaries.
In the present case, for instance, had the plaintiff immediately contested his illegal discharge, then the school board might have been able to terminate instead the route of another or more willing bus operator, or it could in any event have held almost a year earlier the formal hearing abolishing the plaintiff’s bus route as unnecessary, thus avoiding the plaintiff’s claim for unpaid salary during such interval. As it is, what monies may have been allocated for the payment of the claimant’s salary had already been spent for other public purposes by the time the plaintiff finally notified the school board of his claim of illegal discharge and, should the plaintiff’s claim now be allowed at this late date, then the school board will be required to divert public monies from educational purposes for the payment of this unearned salary, the monies planned for which having already been spent due to the plaintiff’s delay in asserting his claim.
Finally, the plaintiff’s excuse for not notifying the school board and filing his suit earlier is that he had consulted a prominent Colfax attorney on August 29, 1958, who withdrew from representation of the claimant on December 10th without in any way having notified the School Board, and that (through a nephew) the plaintiff about three weeks later sent his papers to an Alexandria attorney, who also took no action until the plaintiff for the first time went to this attorney’s office and withdrew his papers shortly before August 13,' 1959. The plaintiff then retained his present counsel, who prosecuted plaintiff’s claim diligently and ably, within two weeks filing the present suit. However, any delay of the attorneys timely retained by the plaintiff in filing suit to contest the illegal discharge is nevertheless a delay charged to the public employee as causing disadvantage to public administration and the public fisc, so as to require dismissal of the tardily filed suit on the ground of laches. State ex rel. McMurray v. Orleans Parish School Board, 189 La. 502, 179 So. 834, 836.
For the foregoing reasons, at the cost of the plaintiff-appellant, the trial court’s judgment dismissing this suit is
Affirmed.