199 So.2d 345 (1967)
Robert H. PENNY et al., Plaintiffs-Appellants,
v.
W. George BOWDEN, Jr., et al., Defendants-Appellees.
No. 1837.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1967.
On Rehearing June 1, 1967.
*347 Bernard Kramer, Alexandria, for plaintiffs-appellants.
Gist, Methvin & Trimble, by H. B. Gist, Jr., Alexandria, for defendants-appellees.
En Banc.
FRUGÉ, Judge.
The plaintiffs, three former police officers presently retired from the Police Department of the City of Alexandria, seek to mandamus the City of Alexandria to pay into the Alexandria Police Pension Fund amounts allegedly due under the state statute establishing the fund. The Mayor of the City of Alexandria, the Commissioner of Finance and Utilities, the Commissioner of Streets and Parks, and the City Council were made defendants in their capacity as representatives of the City. The defendants answered the plaintiffs' petition, raising numerous exceptions and defenses, and the trial judge, after a hearing on the merits, sustained an exception to the plaintiffs' lack of procedural capacity and dismissed the suit. From the adverse ruling below, the plaintiffs have appealed to this court.
The facts are undisputed. In 1954 the Legislature provided for the financing of a police pension fund as follows:
* * * * * *
"If the municipality has a population of fifty thousand or less, it shall set aside for the fund, twenty-five percent of the fines collected by its municipal courts for the infraction of municipal ordinances and twenty percent of the money collected for licenses, privilege taxes, or permits for the sale of beverages containing alcohol. The municipality shall appropriate and pay out of its general alimony taxes, into the fund, annually at the beginning of the fiscal year, an amount equal to any deficit which occurs in the operation of the fund for the preceding year. As amended Acts 1954, No. 246, § 1."
For a few years after the passage of this statute, the balance of the Alexandria fund continued to increase without any municipal appropriations under the above "deficit" provision because few policemen had attained the requisite length of service to retire under the act. In 1958 the level of the Alexandria fund reached $192,397.23. Beginning in 1959, however, more and more policemen became eligible under the act and the benefits paid from the fund exceeded the statutory revenues as provided by R.S. 33:2222 in the following amounts:

1959 $ 3,477.84
1960 9,996.45
1961 27,974.15
1962 27,787.32
1963 18,906.63
1964 15,577.57
1965 12,687.40
1966 16,901.04

Thus, as of April 30, 1966, the total assets of the fund had declined from a *348 high of $192,397.23 to the present level of $62,566.67. The record establishes that at no time during the last eight years, (the alleged "deficit" years) has the City of Alexandria appropriated and paid into the fund any amount of money as the plaintiffs contend is required by the revenue provisions of the statute. The object of this suit, therefore, is to compel the City by writ of mandamus to appropriate and pay into the fund the sum of the past yearly deficits incurred in the operation of the fund.

EXCEPTIONS
The defendants filed, among others, an exception to the plaintiffs' procedural capacity and the trial judge, after hearing on the merits, sustained this exception, holding that the Board of Trustees of the fund has exclusive control over the proceeds and is therefore the only party who could properly bring this action. The Board of Trustees is established by the Police Pension Statute and has charge of the management of the fund, pension applications and assessment of police officers' salaries for deposit in the fund. R.S. 33:2225. The membership of the Board of Trustees for the Alexandria fund is composed of the Mayor, the Chief of Police, the City Attorney, a representative elected by the Police Department, and the City Clerk. R.S. 33:2224.
The issue thus presented is not whether the Board of Trustees is a proper party to bring this action, but whether it is the only party who may sue to compel performance under the statute.
A party, in order to sue, must possess a real and actual interest which he asserts in the action. LSA-C.C.P. Art. 681. The trial judge, in his written reasons for judgment, analogized the interests of the present plaintiffs to the interests of welfare recipients in receiving welfare benefits from the State, and to the interest of a city employee in having the City Council budget sufficient funds for his salary for the ensuing year. We agree that welfare recipients, as gratuitous beneficiaries of the legislative will, could not mandamus the State Legislature to appropriate welfare funds. We also feel that under ordinary circumstances a city employee could not mandamus the City Council to compel future salary appropriations (but see Annotation at 81 A.L.R. 1253 for cases where mandamus did lie in this situation).
It is stipulated in the instant suit that the plaintiffs are now retired and receiving full benefits under the act. The interests of the plaintiffs herein, therefore, are in the nature of vested rights since they have fulfilled the qualifications for retirement under the statute and, while active employees, contributed a portion of their salary toward the establishment of the fund. Meyer v. Board of Trustees, 199 La. 633, 6 So.2d 713 (1942); Annotation, 52 A.L.R.2d 437. Prior to actual retirement, rights in pension funds are generally not considered vested. Bowen v. Board of Trustees of Police Pension Fund, 76 So.2d 430 (Orl.La.App. 1954). But where employees contribute a portion of their salary to the establishment of the fund, the nature of the pension is deferred compensation, and municipal employees have contractual or quasi-contractual rights therein. 67 C.J.S. Officers § 92, pages 331-334. Since the plaintiffs are presently retired and have in the past contributed a portion of their salaries to the funds, it is our view that they possess a "real and actual interest" which they seek to assert in this mandamus suit. LSA-C.C.P. Art. 681. Undoubtedly the Board of Trustees of the pension fund would have less difficulty in bringing this action than the present plaintiffs. That the Board has not seen fit to do so is understandable, however, in view of the fact that a majority of the Board is composed of city officials, some of whom are the object of the instant mandamus suit. It is our opinion, therefore, that the exception to the plaintiffs' procedural capacity should not have been maintained and that the plaintiffs possess *349 the requisite interest to prosecute this action.
The city further excepts to the plaintiffs' petition for mandamus on the grounds that the Board of Trustees of the pension fund was not joined as an indispensable party to the suit. In this regard, LSA-C.C.P. Art. 641 provides:
"Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
"No adjudication of an action can be made unless all indispensable parties are joined therein."
Is the Board of Trustees' interest in this suit so interrelated and so directly affected by the judgment that a complete and equitable adjudication of the controversy cannot be made without its joinder? We think not. Assuming that this court grants the relief for which the plaintiffs pray, the only action required of the Board would be to receive the funds appropriated by the City, a duty with which the Board is already charged under the express provisions of the statutes establishing it. R.S. 33:2225, R.S. 33:2227. We conclude, therefore, that the Board of Trustees is merely a ministerial stakeholder and is not an indispensable party to the present action.
The defendants further urge that the plaintiffs' prayer for relief is premature since the parties-plaintiff are receiving full benefits due them under the pension fund and since they have failed to allege or show that they have suffered any damage or harm. This contention is without merit, for the object of the plaintiffs' suit is not to exact damages from the city but to compel the city to comply with an allegedly mandatory duty to appropriate money, which duty, if it exists, is purely ministerial in nature under the mandatory provisions of a state law. The plaintiffs do not seek to recoup personal loss, but rather pray for a mandamus to require the City of Alexandria to comply with a public duty. It is settled that where persons can show the existence of a special interest apart from that possessed by the general public, mandamus will lie to enforce a public duty affecting that interest. 55 C.J.S. Mandamus § 47 a, p. 79; State ex rel. Schoeffner v. Dowling, 158 La. 706, 104 So. 624 (1925).
Despite the defendants' arguments to the contrary, there can be no question as to the propriety of the remedy chosen by the plaintiffs if it is established that a positive legal duty to appropriate the funds exists (an issue we shall shortly decide). For it is settled that a municipality may be compelled by mandamus to appropriate funds for a specific purpose designated by statute, and that mandamus will lie to compel a public officer to perform a duty made ministerial by statute. 38 C.J. § 390, p. 758; 55 C.J.S. Mandamus § 208, pp. 410-412; Wise v. First National Bank of Nogales, 49 Ariz. 146, 65 P.2d 1154 (1937); State ex rel. Richardson v. Board of Trustees, 29 So.2d 489 (La.App. 1st Cir. 1947); New York State Employees Retirement System et al. v. Board of Supervisors of Tioga County, 157 Misc. 87, 283 N.Y.S. 405 (1935), affirmed 278 N.Y. 496, 15 N.E.2d 434 (1938); State of Louisiana ex rel. Goudeau et al. v. State Mineral Board, 141 So.2d 32 (La.App. 1st Cir. 1962).
We therefore conclude that the procedural exception interposed by the defendants should be overruled, and we proceed forthwith to a discussion and determination of the case on its merits.

ON THE MERITS
Counsel for the City contends that under the statute regulating the financing of the police pension fund the city is not required to appropriate and pay to the fund any monies until the level of the fund declines to $16,500.00. This argument is based on an interpretation of the word "deficit" as contained in the financing provision.
*350 The applicable portion of R.S. 33:2222 provides, "The municipality shall appropriate and pay out of its general alimony taxes, to the fund, annually at the beginning of the fiscal year, an amount equal to any deficit which occurs in the operation of the fund for the preceding year."
The plain meaning of this provision would seem to be that if in any current year the withdrawals from the fund exceed the statutory revenues from fines and taxes, the municipality must make up the difference. However, counsel for the City points to a section regulating the minimum fund level (R.S. 33:2228)[1] and argues that this provision and the appropriation provision (R.S. 33:2222) should be read together and, if so considered, requires that the city maintain only a $16,500.00 balance in the fund. In so arguing, counsel relies on an opinion from the Attorney General's office issued at the request of the City of Alexandria which adopts the same construction. With this interpretation of the statute we cannot agree. If the city's view is accepted, the portion of the pension fund available in future years will be reduced to only $1,500.00 because a permanent reserve of $15,000.00 must be maintained at all times. R.S. 33:2228. It is inconceivable that the retirement fund could operate on so small an amount. Furthermore, we note that in some recent years (i. e. 1961, 1962, and 1963) expenditures from the fund have exceeded revenues by an amount greater than $16,500.00. If the city is required to maintain only that amount in the fund, pension recipients will not receive their due, for the total fund, including the supposedly "permanent" fund, will be exhausted before the end of the year.
Retirement statutes are entitled to a non-technical interpretation and an effort to ascertain the ordinary common sense meaning of their terms in order to make effective the general plan of retirement contemplated by the lawmaking body. State ex rel. Morse v. Christianson, 262 Wis. 262, 55 N.W.2d 20 (1952). In accordance with this principle, we reject as unsound the City's argument that no deficit has occurred in its police retirement refund. We feel that the mandatory and explicit language of the appropriations statute places a positive duty upon the city to appropriate and pay, at the end of each fiscal year, the difference between the benefits paid out in that year and the intake of fines and licensing revenues for that same period.
As an alternative defense, the City contends that it has no funds with which to comply with a judgment directing it to appropriate monies into the requirement fund See State ex rel. Ascension Red Cypress Company v. New River Drainage District, et al., 148 La. 603, 87 So. 310 (1921); State ex rel. Richardson v. Board of Trustees, 28 So.2d 489 (La.App. 1st Cir. 1947). The appropriations statute, R.S. 33:2222 (supra), provides that the operating deficit shall be appropriated from the city's general alimony taxes. A reading of the plaintiffs' petition fails to disclose any allegation of the amount of alimony taxes collected each year. However, the Mayor of Alexandria, when questioned by counsel for the City, testified that the general alimony tax for the fiscal year ending April 30, 1966, amounted to approximately $230,000.00 (Tr. 91). The record further reveals that proceeds from the general alimony tax ($230,000.00) are placed in the City's General Fund along with proceeds from other sources such as revenues from the operation of the utilities ($1,000,000), licensing taxes ($290,000), sanitation tax ($260,000), beer tax ($45,000), tobacco tax ($48,000), and miscellaneous ($175,000)[2]. From this General Fund money is appropriated by the City *351 Council at its discretion to meet the various operating expenses of the citypayrolls, maintenance, equipment, etc. The City contends that since its current operating expenses as budgeted and appropriated by the City Council meet or exceed its yearly revenues from various sources, there are no funds available to satisfy the deficit in the retirement fund.
We would perhaps be persuaded by the City's plea of lack of funds if the current operating expenses as budgeted and appropriated by the City Council stood on equal footing with the City's obligation to appropriate and pay any yearly deficit which might occur in the policemen's retirement fund. However, they do not. The obligations comprising the great bulk of the City's current operating expenses are established because, in its discretion, the City Council deems it wise to provide the city with a certain measure of sanitation service, a certain level of police protection, a certain standard of fire protection, and certain utility services. But the duty to appropriate and pay any yearly deficit which occurs in the operation of the policemen's retirement fund is a statutory duty imposed by the will of the Legislature on the municipality. Our system of local government contemplates that statutory charges imposed on a municipality by the Legislature take precedence over a more permissive use of municipal funds, and it is settled that the State has the power to require a municipality to set up and appropriate money to a pension system. La.Const. art. 14, sec. 40(d); 64 C.J.S. Municipal Corporations § 1890; McQuillin, The Law of Municipal Corporations, 3d ed., secs. 12:141 and 4:176; Mayor and Aldermen of the City of Vicksburg v. Crichlow, 16 So.2d 749 (S.Ct. of Miss. 1944); Board of Trustees v. Village of Glen Ellyn, 337 Ill.App. 183, 85 N.E.2d 473 (1949); People ex rel. Kroner, et al. v. Abbott, 274 Ill. 380, 113 N.E. 696 (1960); State ex rel. Sewerage & Water Board v. Commission Council of New Orleans, 151 La. 938, 92 So. 392 (1922). We are of the opinion, therefore, that though in the City Council's view the Council might better serve the inhabitants of the city by allocating the proceeds from the ad valorem tax to other functions, the will of the Legislature in this regard is supreme and must be obeyed.
Finally, the City contends that it should not be required to pay such yearly deficits as occur in the operation of the retirement fund because the statute requiring such an appropriation is invalid and unconstitutional. The City relies on Tumey v. State of Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749, a case which held that a defendant who was convicted before a judge whose fees and costs were dependent on conviction was denied due process of law. Even if we were to admit that the Tumey case has application in this instance because the pension fund is partially financed from fines levied in municipal courts, the City has no standing to contest the constitutionality on this basis since it is not a defendant arrested by a police officer, a portion of whose retirement might be financed by a fraction of the fine levied against it. Furthermore, the plaintiffs do not seek to mandamus the city to pay into the fund a portion of the money collected from fines in municipal courts. Instead, they proceed under an entirely different provision requiring the city to make up yearly deficits in the fund. A declaration that the former is unconstitutional, therefore, would not vitiate the city's duty under the latter.
The City further argues that the appropriations statute is unconstitutional, being arbitrary and discriminatory, and a deprivation of the City's property without due process because it imposes upon the municipality a heavy financial burden without providing a means for raising the money to finance the program. No authority is cited for this contention and there may well be none, for a municipality as a political subdivision of the state is not entitled to the due process or equal protection guarantees of the Federal Constitution because it is not a "person" within the contemplation of the Fourteenth Amendment.
*352 Warren County, Mississippi v. Hester, 219 La. 763, 54 So.2d 12 (1951), certiorari denied, 342 U.S. 877, 72 S.Ct. 167, 96 L.Ed. 659; 16A C.J.S. Constitutional Law § 604, pp. 721-729. Neither is the legislation in question discriminatory, for it applies with equal force to every municipality in this state within the specified population limits. R.S. 33:2222. Under our law, acts of the Legislature are presumed constitutional unless it is clearly shown to the contrary. Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111. We feel that the City has failed to raise serious constitutional objections to the statute involved and we therefore reject the City's arguments that it is invalid.
In fine, the City's position seems to be that the police retirement plan is actuarily unsound, and unless this court refuses to require the city to perform its clear duty under the statute the city will meet with financial hardship and perhaps eventual bankruptcy. Thus, the City asks this court to substitute its judgment for that of the Legislature and to abrogate as unwise a clear legislative mandate to the municipalities within its province. This we cannot do. If the Act is indeed unwise, the City's remedy lies in the Legislature rather than the judiciary. This court cannot, under the guise of statutory interpretation, substitute its own political and economic evaluations for that of the State Legislature, a body duly constituted by the people of this state to make such evaluations. 16 C.J.S. Constitutional Law § 198, p. 951; Gamble v. Calcasieu Parish School Board, 139 So.2d 39 (La.App. 3d Cir. 1962).

DECREE
For the foregoing reasons, the judgment of the trial court is reversed. Accordingly, an order is hereby directed to the Honorable Guy E. Humphries, Jr., District Judge of the Ninth Judicial District Court, commanding him to issue a writ of mandamus to W. George Bowden, Jr., Mayor of the City of Alexandria; Leroy Wilson, Commissioner of Public Utilities of the City of Alexandria; William H. Lambdin, Commissioner of Streets and Parks of the City of Alexandria, and the City Council of the City of Alexandria, directing the said City Council to appropriate and pay into the police pension and relief fund the sum of $133,308.41. The defendants-appellees are taxed with reporter's costs of taking testimony but, as representatives of a public body, are exempt from all other court costs. LSA-R.S. 13:4521; Fuller v. Police Jury of Grant Parish, 144 So.2d 766 (La.App. 3d Cir. 1962).
Reversed and rendered.
ON REHEARING
En Banc.
FRUGÉ, Judge.
In our original opinion we held that the City of Alexandria, relying on an erroneous interpretation of the funding terms of the Policemen's Pension Act, had failed to appropriate and pay into the retirement fund statutorily dedicated revenues over a period of the past eight years. We accordingly ordered that the district court issue a mandamus directing the City of Alexandria to pay into the pension fund the sum of $133,308.41, representing the total of the last eight years' annual deficit as defined by the Policemen's Pension Act. We granted rehearing to review the question of whether, by virtue of the eight year delay in the commencement of the plaintiffs' suit, the City should be relieved of the responsibility for deficits occurring in the years prior to 1965, the year in which the plaintiffs' suit was instituted. To this end the City urges before this court the applicability of the doctrine of laches on the part of the plaintiffs with respect to any deficits incurred prior to 1965.[1]
*353 The legal principle which, by analogy, we deem controlling of the instant case is found in the cases involving suits for unpaid salary by illegally discharged public employes who are protected under the tenure laws. See, e. g., Arrington v. Grant Parish School Board, 130 So.2d 443 (La.App. 3d Cir. 1961); Fields v. Rapides Parish School Board, 231 La. 914, 93 So. 2d 214 (1957). In those cases and the authorities cited therein, it was recognized that unreasonable delay by a public employe in asserting admittedly valid monetary claims against a public body may relieve that body of liability for past due salaries under the doctrine of laches. This principle is based upon the sound public policy of requiring reasonably prompt assertion of this type of claim in order that the public revenues normally channeled in the claimant's direction might not be irretrievably diverted to another public purpose equally lawful and desirable, thereby upsetting the orderly fiscal processes of government.
We feel that under the facts in the instant case the laches principle as expressed in the above cited cases should apply, for during the years prior to the institution of this suit, public revenues which might have been used to supplement the basic income of the police retirement fund were lawfully spent on items of equal public importance, such as fire and police protection, sanitation and the like.[2]
In view of the fact that the fiscal stability of the retirement fund will not be impaired inasmuch as the City now must make up any yearly operational deficit in the fund, we feel that the dictates of justice and sound public policy demand a relief of the City's responsibility for fund deficits which occurred prior to the year in which the plaintiffs sought judicial relief. Accordingly, we hereby sustain the City's plea of laches as to the deficits incurred in years prior to 1965.
For the foregoing reasons we hereby modify our original decree insofar as it provides that the City must pay into the policemen's retirement fund operating deficits incurred prior to the year 1965. We affirm our original decree in respect to the deficits incurred in 1965 ($12,687.40), and 1966 ($16,901.04), and in all other particulars.
Amended and affirmed.
NOTES
[1] "If the municipality has a population of fifty thousand, or less, and not exceeding fifteen thousand, the sum of fifteen thousand dollars shall be retained as a permanent fund. No pension shall be paid or money drawn from the fund until the sum of fifteen hundred dollars, above the fifteen thousand dollars held as a permanent fund, is to the fund's credit."
[2] Approximate figures.
[1] There is no issue as to the propriety of our considering such a plea, for by joint stipulation of counsel both parties have agreed to this court's consideration of the matter.
[2] See Commonwealth ex rel. Coghlan v. City of Beaver Falls, 355 Pa. 164, 49 A. 2d 365 (1946), for a factually similar case in which the court, relying on a 12-year delay, relieved the city of responsibility for pension fund appropriations in years prior to suit.