JONES, Judge.
This is a suit by a dismissed tenured school bus driver to recover unpaid salary and be reinstated to her job because she was terminated without a hearing before the School Board as required by LSA-R.S. 17:493.[1] The defense is that plaintiff’s action is barred by the doctrine of laches. This defense is based on the long delay which elapsed between the termination and the institution of suit and the fact that during this period the Board incurred the expense of employing a replacement driver for plaintiff’s bus. The lower court rejected plaintiff’s demands. We affirm.
*394 The only issue on appeal is. whether the trial court was correct in holding the doctrine of laches barred plaintiffs claim.
Plaintiff had been employed by the Bossier Parish School Board as a bus driver for approximately 15 years. On October 30, 1974 she was arrested and charged with 2 counts of burglary. On the following day, based on instructions from the School Superintendent, the Director of Transportation verbally suspended plaintiff and employed another driver to run her route. On February 3, 1975 plaintiff entered a plea of guilty to one charge of burglary. On February 6, a meeting of the Transportation Committee, composed of 6 members of the 12 man School Board was held and a decision reached to terminate Mrs. Doyal because of her guilty plea. The Superintendent of Schools was instructed to advise her of the termination. The formal letter of termination was received by plaintiff February 12, 1975. The letter gave no reason for the termination, although plaintiff was verbally advised by the Transportation Director and the Superintendent of Schools as to the reason for her termination. There was no compliance whatsoever by the Board with the provisions of the cited statute which sets forth the proper method of terminating a tenured bus driver. The evidence reflects the failure to comply with this statute and hold a hearing was because of the belief such procedure would embarrass plaintiff. Plaintiff gave no indication to her employer she desired to contest her dismissal or to have a hearing in connection therewith as provided by the statute. The first notice received by the Board of plaintiff’s desire to contest the procedure of her dismissal was the service of this suit, which was filed November 4, 1975.
The trial court relied on the decision of Arrington v. Grant Parish School Board, 130 So.2d 443 (La.App., 3d Cir. 1961) wherein the court upheld a defense of laches and denied a dismissed, tenured bus driver’s claim for wages. In that case the bus driver was terminated because of the discontinuance of his particular bus route. The route was discontinued without complying with the provisions of LSA-R.S. 17:493 which requires that before a permanent bus operator may be removed from office due to discontinuance of his route, a hearing before the Board must be held to establish it is in the best interest of the school system to discontinue the route. The Arrington bus driver made no objection to his discharge until one year less two days following his termination, when he sued to recover his unpaid salary for the period following the allegedly illegal discontinuance of his route.
The cases have generally found the doctrine of laches applicable to a discharged public employee’s claim for wages when his delay in pursuing the claim could result in double payment for one service. In State v. Sewerage & Water Board, 177 La. 740, 149 So. 441 (1933) the court discussed the requirement for prompt action on the part of a public employee, stating:
“The necessity for prompt action on the part of a public employee who is unlawfully removed from his position is so generally recognized by the courts that we deem it unnecessary to cite any of the cases exemplifying the rule. We think it suffices to say that the principle underlying all the decisions is based on considerations of public policy, so that an aggrieved employee should promptly take effective action to assert his rights, to the end that if he is successful in his action the public service may be disturbed as little as possible and two salaries may not be paid for but one service.
“* * * [i]n legal significance, laches is regarded as not mere delay, but delay that works a disadvantage to another. ...” Id. 149 So. p. 442
Arrington, supra, did not involve the problem of possible double payment for one service because it arose under circumstances where plaintiff lost his job due to discontinuance of a bus route and there was no employment of another driver such as in the instant case. Arrington pointed out that the factual situation faced by the Board due to delay on behalf of plaintiff in asserting his claim would still result in a *395 dissipation of public funds if plaintiffs claim was recognized since if the driver had promptly contested dismissal, the Board could have immediately terminated the route in accordance with the requirements of the statute, and thus avoided plaintiffs claim for unpaid salary for a full period of one year.
In Albritton v. Union Parish School Board, 307 So.2d 676 (La.App., 2d Cir. 1975) the court discussed the doctrine of laches and its application, quoting extensively from Fields v. Rapides Parish School Board, 231 La. 914, 93 So.2d 214 (1957):
“ ‘The doctrine of laches with respect to a public employee, invoked by this defendant, is well stated in Williams v. Livingston Parish School Board, La.App. First Circuit, 191 So. 143, 144, as follows: “Sound public policy requires that an employee of a public body who claims to have been illegally discharged should press his claim for reinstatement with diligence and without unnecessary delay. The rule that laches on the part of such public employee will bar his claim for reinstatement is not based on any law of prescription or limitation of actions, but it arises from reasons of public policy. The processes of government must go on and employees and officials must be paid out of public revenue for carrying on the functions of government. Where a discharged employee sits idly by for an unreasonable length of time without pressing his claim for reinstatement, those charged with the duty of securing the necessary working personnel cannot hold up the administrative functions of government awaiting a decision on the part of the discharged employee as to what course he will take. The prevention of duplication of positions and the payment of double salaries requires such discharged employee, not only to press his demands, but also to submit his claim to the courts for adjudication without unnecessary delay.”
“ ‘The holding of the trial court in this cause that plaintiff’s claim is barred by laches is in keeping with the above pronouncement and is amply supported by the well settled jurisprudence of this state. Incidentally, the delay in each of the previously decided cases was much shorter than that involved in the instant controversy. See State ex rel. Calmari v. Orleans Parish School Board, 189 La. 488, 179 So. 830 (delay of one year, less four-days); State ex rel. McMurray v. Orleans Parish School Board, 189 La. 502, 179 So. 834 (delay of about one year); Fontenot v. Evangeline Parish School Board, La. App., 185 So. 104 (delay of about two years); Williams v. Livingston Parish School Board, supra (delay of eleven months); State ex rel. Eberle v. Orleans Parish School Board, 221 La. 243, 59 So.2d 177 (delay of one year, less three days).’ ” Id. page 215
Plaintiff asserts that defendant’s plea of laches should be rejected on the authority of Devillier v. City of Opelousas, 247 So.2d 412 (La.App., 3d Cir. 1971) where the court refused to apply the doctrine of laches to deny city firemen payment for overtime services performed by them within a period of one year prior to the institution of suit. The city was aware the overtime services were being performed and any delay attributable to plaintiffs in asserting their claim for payment for the overtime wages awarded in this case cannot be said to have in any way prejudiced the city or worked to its disadvantage. Devillier is factually distinguishable from the instant case and from State v. Sewerage & Water Board, Fields and Albritton, supra, wherein employees sought pay for services not rendered, whereas the Devillier claimants were held entitled to wages duly earned by them. Bradford v. City of Shreveport, 305 So.2d 487 (La.1974), which cited Devillier, is distinguishable on the same basis.
Plaintiff was aware October 31, 1974, the date of her initial suspension, that her job was in jeopardy and yet she delayed for a period of one year and 3 days before instituting suit. Her awareness of her situation was made even more acute on February 12 when she received the letter of termination and she waited approximately 9 months from this date before taking any *396 affirmative action to inform the Board she contested her dismissal. The delays on her part in this connection clearly constitute laches as defined in the cited jurisprudence. As a result of her delays in asserting her opposition to the illegal termination, plaintiff is now claiming salary for a period in excess of one year for work not performed. The board employed and paid another driver for plaintiffs bus commencing October 31, 1974. To reinstate the plaintiff and pay her claim would be a clear disadvantage to the Board and would amount to a substantial prejudice or upset to its fiscal affairs.
For the reasons set forth, we affirm the trial court’s decision at plaintiff’s cost.
Affirmed.

. § 493. Removal of bus operators; procedures; right to appeal
A permanent school bus operator shall not be removed from his position except upon written and signed charges of willful neglect of duty, or incompetence, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipment in a safe, comfortable and practical operating condition, or of being a member of or contributing to any group, organization, movement or corporation that is prohibited by law or injunction from operating in the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish in which the school bus operator is employed. An additonal ground for the removal from office of any permanent school bus operator shall be the abolition, discontinuance or consolidation of routes, but then only if it is found as a fact, after a hearing by the school board of the parish, that it is in the best interests of the school system to abolish, discontinue, or con-solídate said route or routes. All hearings hereunder shall be private or public, at the option of the operator or operators to be affected thereby. At least fifteen days in advance of the date of the hearing the school board shall furnish the affected operator or operators a copy of the written grounds on which said abolition, discontinuance or consolidation of routes is sought. The operator or operators affected shall have the right to appear in their own behalf and with counsel of their selection, and be heard by the board at the hearing. Nothing herein shall impair the right of the parties to appeal to a court of competent jurisdiction.
In the event that one or more school bus operators must be removed due to the abolition, discontinuance or consolidation of routes, the principle of seniority shall apply, so that the last school bus operator hired to serve within the school system to be affected shall be the first to be removed.